# CHARLESTON.

## BOND *et als v.* TAYLOR *et als.*

Submitted March 8, 1910.   Decided December 6, 1910.

A case in which the facts found, as substantially alleged, were supported by proof, justifying the decree appealed from, upon the rules and principles stated in the following points of the syllabus:

1.   JOINT ADVENTURES—*Mutual Duties.*

Where two or more persons, as partners in fact or otherwise, engage in a joint enterprise to buy land or the timber thereon for sale and profit the relationship of trust and confidence is thereby established, requiring good faith and fair dealings between the parties.

2.   SAME.

When such relationship is once established no subsequent dealings with the trust subject by either of the parties, while such relationship continues, can, as between trustee and *cestui que trust*, relieve it from the trust.

3.   SAME—*Fraudulent Conveyance of Trust Property to Third Person.*

Where parties engage in a joint enterprise to buy and sell real estate, or the timber thereon, and one of them takes title thereto in himself pursuant to agreement, or fraudulently acquires it, and with notice to him attempts to reconvey or release the

property, the subject of the joint enterprise, to the vendor, in fraud of the rights of other parties, equity will impress the property with the trust, in the hands of the party so acquiring the property, and enforce the trust.

4. FRAUDS, STATUTE OF—*Express Trust.*
    In such cases of express trust the statute of frauds is inapplicable.

Appeal from Circuit Court, Pocahontas County.

Action by William C. Bond and another against W. S. Taylor, the Harpers Ferry Timber Company and others. Decree for plaintiff, and defendant timber company appeals.

*Corrected and Affirmed.*

*Samuel T. Spears,* for appellant.

*Osenton, McPeak & Horan, Mollohan, McClintic & Mathews,* and *L. M. McClintic,* for appellees Bond and others. *Andrew Price* and *E. D. Talbott,* for appellee Taylor.

MILLER, JUDGE:

By their original and amended bills, plaintiffs, William C. and N. U. Bond, sought to establish, and have decreed to them a two thirds undivided interest in the timber on a tract of 8,467¼ acres in Pocahontas county.

The title to this land is in the defendant, the Harpers Ferry Timber Company, a corporation, organized by the defendant, W. S. Taylor, and four personal friends associated with him, each subscribing for one share of stock, par value of one hundred dollars each, and so far as the record shows constituting the entire amount of capital stock subscribed. Whether the amount subscribed was ever paid in does not appear. This land was acquired from the Pocahontas Tanning Company, a corporation, by Taylor and was by his direction conveyed to said timber company, by deed of December 1, 1904, at the price of $25 per acre, aggregating $211,681.25 of which about $4,000 was paid down, from some source, the timber company executing to the tanning company its fifty three notes for $3,918.50 each, the first payable June 1st, 1905, the others falling due respectively on the first day of each succeeding month, until the entire purchase money should be paid.

The theory of the original bill was, that after negotiations begun and continued between the timber company and the plaintiff William C. Bond, acting for himself, his brother N. U. Bond, and the said W. S. Taylor, pursuant to a prior agreement between them, and had resulted in a contract for the purchase of said timber, from the timber company, through Victor B. Woolley, its agent and attorney, the said Taylor, colluding with Woolley, the attorney, and other incorporators and directors of the timber company, and in fraud of the rights of the plaintiffs, had procured that company, October 3, 1905, to sell and convey said timber directly to himself, upon substantially the same terms and conditions upon which it had been agreed the timber should be sold and conveyed to the plaintiff William C. Bond, or to him and Taylor, for himself or themselves, and the said N. U. Bond, jointly interested therein.

In their answers to the original bills Taylor and the timber company disclosed for the first time that on November 25, 1905, after the injunction had been awarded against them on the original bill, November 17, 1905, and we assume after process thereon was sued out, returnable to December Rules following, but whether then actually served or not does not appear, the timber company and Taylor, by memorandum in writing, as recited therein, thereby mutually agreed, in consideration of a certain deed, bearing even date therewith, executed between the parties thereto, and the sale of certain timber, lying and being upon the premises described in said deed, that the contract annexed thereto, being the said contract of October 3, between the said timber company and the said Taylor, for the sale and conveyance of said timber to Taylor, should be "rescinded and rendered null and void, and of no more effect than as if the same had never been entered into between the parties." It will be observed that this paper does not purport to be a reconveyance by Taylor to the timber company of the timber conveyed to him; it purports to be only a rescission, and an attempt to render null and void the prior deed to him.

The amended bill, filed February 20, 1906, in addition to the matter alleged in the original bill, charged in substance that the proposition of the timber company, covered by the negotiations begun and continued between it and the plaintiffs and

Taylor, through William C. Bond, and the particular terms and conditions whereof, were stated orally, and in letters, and telegrams, and more formally in a draft of the proposed contract, submitted to plaintiff, William C. Bond, by the said Victor B. Woolley, agent and attorney of the said timber company, in a letter addressed by him to the said William C. Bond and Walter S. Taylor, of August 22, 1905, but mailed to Bond only at Pittsburg, Penna., and by letters from said Woolley to Bond, in reply to letters from Bond to him of September 15th, and September 18th, 1905, had been duly accepted by Bond for himself and associates, by letter to said Woolley of September 22, 1905, a time and place for final execution of the contract upon the part of the timber company and the vendees therein, being also suggested in this correspondence; that in the month of April, preceding, and with the view of purchasing this timber and manufacturing it into lumber, for the market, a partnership agreement had been entered into between plaintiffs and Taylor, as the Durbin Lumber Company, the plaintiffs to put in $50,000 as working capital, and the defendant Taylor to put in, at a fair valuation, a saw mill plant owned by him, and the balance of his share in cash; that at the time of the formation of said firm the duty of carrying on negotiations for and concluding the purchase of the timber was delegated to William C. Bond, the duty of acquiring certain concessions from or agreements with certain railroads for getting out the timber and getting the lumber to market, was assigned with other duties to the plaintiff N. U. Bond, and that to Taylor was delegated the duty of acquiring certain rights of way; and that other details were agreed upon, particularly with reference to the operation of the proposed plant and marketing the product, and the part each should take therein, and that much had been done in furtherance of the project by each of the parties; that while occupying this relationship of co-partner and of trust and confidence to the plaintiffs, and with notice thereof to the timber company, and Woolley, its agent and attorney, Taylor had procured said timber company to sell and transfer to him said timber by the deed or contract of October 3, 1905, upon substantially the same terms and conditions upon which by the agreement aforesaid the said timber had been sold, to be transferred to the said William C. Bond, or to him and Taylor, for the use of said

partnership, or a corporation to be organized, and that said purchase by said Taylor, while standing in such relationship of trust and confidence, should be decreed to have been for the use and benefit of said partnership; that by the attempted rescission and nullification of said contract of October 3, 1905, and the release of said timber by Taylor to his timber company, the property and assets of said firm, a dissolution thereof had been effected, and that said timber company should be decreed to be holding two thirds interest in said timber in trust for the plaintiffs.

The court below on final hearing, on June 4, 1909, pronounced the decree appealed from. Predicating its decree for plaintiffs thereon the court found certain specific facts, numbered in the decree from one to ten, but each fact so found contains a number of facts. Some are conclusions of law, adjudicating the rights of the parties rather than mere findings of facts. Segregated and more briefly stated, they are as follows: (1) That a partnership agreement was entered into between plaintiffs and W. S. Taylor for the purpose of buying the timber upon the tract of the Harpers Ferry Timber Company; (2) That the firm name of the partnership was Durbin Lumber Company; (3) That the interest of the partners, William C. Bond, N. U. Bond, and W. S. Taylor, was one-third each; (4) That subsequently they decided and agreed to incorporate the Durbin Lumber Company and have the legal title to the timber transferred to it; (5) That a charter was issued to said Durbin Lumber Company upon an application signed by the parties and their attorneys as stockholders; (6) That the Harpers Ferry Timber Company owned the timber at the time of these negotiations; (7) That the Harpers Ferry Timber Company was created and organized by W. S. Taylor, who induced the other stockholders to join him; (8) That in all the transactions in the Harpers Ferry Timber Company as shown in this case W. S. Taylor took an active, if not a leading part therein, and that he was the dominant spirit in all the transactions of the corporation; (9) That on the 22nd day of September, 1905, the plaintiff, W. C. Bond, concluded a contract in writing with the Harpers Ferry Timber Company, purchasing the timber on the 8467 acre tract; (10) That on October 3rd, 1905, Taylor obtained from the Harpers Ferry Timber Com-

pany a contract or deed selling him the timber on the land in question upon practically the same terms as the contract previously accepted by W. C. Bond, and that by reason thereof the said Taylor became and was the trustee for the plaintiffs as to two-thirds of said timber, or, in other words, that the timber in his hands was impressed with a trust for the plaintiffs' benefit; (11) That Taylor refused to recognize the rights of the plaintiffs in and to such timber in accordance with their partnership agreement at Pittsburg; (12) That on November 25th, 1905, eight days after the granting of the temporary injunction in this case, the defendants, Taylor and the timber company, attempted to abrogate the contract of October 3rd, but that in said attempted abrogation the Harpers Ferry Timber Company was not a purchaser for value or without notice, and that the same was ineffective to divest the timber of the trust in favor of the plaintiffs; (13) That under the contract from the Harpers Ferry Timber Company to Taylor of October 3rd, already found to have been for the benefit of the plaintiffs and Taylor, that Taylor is to have twelve years from its date to manufacture and remove the timber from the land, and further that the timber company and Taylor by denying the plaintiffs' rights thereunder, have rendered it impossible to begin the manufacture of the timber under said contract, and thereupon decides as to the right of the plaintiffs, that said twelve years have not yet begun to run, and should run from the time the plaintiffs or a purchaser at a judicial sale is enabled to obtain possession; (14) That a vendor's lien suit is pending against the timber company to sell the land and timber; (15) That in the event of a sale for a price greater than $2.50 per thousand feet the plaintiffs are entitled to two-thirds of any surplus and the timber company to one-third, after the satisfaction of such vendor's lien, and subject to a settlement between them as to money and time expended for which credit should be given.

As stated some of these findings are adjudication of right rather than findings of fact. The findings of fact we think are substantially covered by allegation and are abundantly supported by proof. And no fault so far as we see is to be found with the adjudications or conclusions of law.

Upon the facts so found, and the decree fixing the rights and status of the parties, the court further decreed, that M. J. Sims

be appointed a special receiver, to take possession of the timber on said land, which is of the quality and size mentioned in the contract between the timber company and Taylor, of October 3, 1905, directing him to do all things necessary and proper to be done to protect said timber from loss or destruction, and, in so far as it might be within his power, to do all things necessary and proper to protect the said timber company in and to the land and timber not sold to the said Taylor, in accordance with the promises and agreements of said Taylor in said contract. And he is also thereby authorized to negotiate the sale of said timber, subject to all the terms and stipulations contained in the contract between said timber company and Taylor, except such necessary changes in dates and names as may be necessary to conform to said contract, and the rights of the parties adjudicated and decreed by said decree, and with the further exception that should said property sell for more than the price stipulated in said contract the terms of payment for the excess should be as such special receiver might deem reasonable and to the best interests of the plaintiffs and the said timber company, but it is provided that said special receiver shall not enter into a final contract of sale, until all the terms and conditions thereof have been submitted to the court for approval.

The decree also refers the cause to a commissioner, to state an account of said partnership, and between the partners, giving certain specific directions therein with respect to certain contingent conditions that might arise, all as the basis for subsequent decree disposing of all questions involved, and the rights of the parties; and it is finally provided thereby that nothing contained therein should be so construed as to prevent the plaintiffs or the Harpers Ferry Timber Company from paying off and discharging the vendor's lien on said timber, and in the event that either of said parties should pay off said lien, that full credit should be given therefor in any distribution or division of said timber or the proceeds of the sale thereof.

The chief points of attack by appellants upon this decree, are, that the partnership was not established; that the timber company was a purchaser from Taylor for value, without notice, or notice of the partnership agreement; that the proof

does not establish the fact that the letter from W. C. Bond to Woolley, of September 22, 1905, was either mailed by Bond, or received by Woolley, and that if received it was not an acceptance unconditionally of the proposition communicated by Woolley, through the post office, and whereby Woolley for the timber company made the post office department its agent to receive and transmit acceptance thereof; that Woolley did not by his letter of September 18, 1905, waive the manner of acceptance or the requirement that Taylor should join with Bond therein; that if the plaintiffs ever had any rights under the contract made with Taylor or with Bond they lost the same under the provision for forfeiture in the proposed contract to Bond and Taylor. It is also assigned as error that the court took judicial notice of the vendor's lien suit of the Pocahontas Tanning Company.

That a partnership was formed by agreement at Pittsburg in April, 1905, the evidence leaves no room for two opinions. It is fully established not only by the positive testimony of witnesses present, but by things done afterwards in furtherance of the partnership business, some of which have already been referred to. Taylor in one of his letters to Bond actually refers to "our firm". In others he refers to the Durbin Lumber Company, before charter obtained, or organization of the corporation. If there was not a syllable of testimony as to the agreement we think the partnership could well be established from the evidence of what the partners did, and from their relation to and dealings with the property of each other. *Setzer* v. *Beale,* 19 W. Va. 274; *Woods* v. *Ward,* 48 W. Va. 652, 664.

Did the timber company have notice? We think it did. The court below so found. The argument is made that notice to Taylor, a director, interested with the Bonds in the purchase of the property, was not, under the authorities, notice to the company. Authorities are cited for this proposition. The general rule respecting this subject is generally understood. The case does not turn on the question of notice to Taylor. Woolley, the attorney and agent for the company, in all these negotiations concededly had notice of the rights of the plaintiffs in the negotiations and sale of this property. Notice to him, as such agent, was notice to defendant corporation. It was through him that Taylor dealt with his company in securing the contract to be

made directly to himself in place of to Bond, or Bond and Taylor, a contract as already shown, upon substantially the same terms and conditions as the one submitted to Bond. The relation in time, place and circumstance between the proposition to Bond and the contract with Taylor is too close not to charge notice to Woolley, and through him to his company.

Was the letter from W. C. Bond of September 22, 1905, received by Woolley? The court below found that it was. That it was written, addressed to Woolley, at Wilmington, and deposited in the post office at Pittsburg, is proven by three witnesses, the plaintiffs and the stenographer who transcribed it. It is proven never to have been returned according to the directions on the envelope. It is hardly conceivable that Bond would not have answered this letter of Woolley. The plaintiffs so far as this record shows had acted in entire good faith, they wanted the property, indeed, were anxious to get it. Both of the plaintiffs had done many things, known to Taylor and to Woolley, in furtherance of the scheme to acquire the property and operate it. They had spent a good many hundred dollars, and had obligated themselves by various contracts, and it is unthinkable, seeing as we do the circumstances surrounding them, and the facts impelling them, that they should have so suddenly dropped the proposition, as defendants would have us believe. The fact that the proposed contract was not signed by Bond and Taylor and returned to Woolley seems immaterial. The proposition to insert the name of Taylor was not according to the agreement of the parties. Bond was authorized, as Taylor admits, and as the agreement was, to take the title to the property in his own name. The contract was not signed by the corporation, and while Bond seems to have made no objections to Taylor signing it, the fact is that Taylor was at hand, in Wilmington where Woolley was, and where Bond was not, and if Woolley desired Taylor to sign it is apparent that he could have obtained Taylor's signature. The fact that he did not is, made the subject of a forceful argument by counsel on the other side. The question we think is immaterial and unnecessary to pursue. It will suffice for all purposes to say that it strikes us as a very slight ground on which to deny the legal effect of Bond's acceptance of the timber company's proposition.

Woolley knew of Bond's contract to bind the plaintiffs and Taylor thereby.

The court did not in fact take judicial notice of the vendor's lien suit. The pendency of that suit was fully proven, in a way satisfying the purposes of this suit and justifying the decree.

We regard it unnecessary to reconsider, for the purposes of this suit, the correctness of *Campbell* v. *Beard,* 57 W. Va. 501, and *Cobb* v. *Dunlevie,* 63 W. Va. 398, as to the effect of posting a letter of acceptance in the post office. As we view this case it does not turn on that question. The decree may stand not only on the theory of partnership and relationship of Taylor to the firm, when he acquired the deed for the timber from his timber company of October 3, but, independently of the partnership, on the fact that he had concededly, with notice to Woolley and his timber company, joined with the plaintiffs in a joint enterprise to purchase this timber, and while he stood in that relation to plaintiffs, and pending negotiations for the timber he procured the deed therefor to be made to himself, and thereupon set up adverse claim to the property, a fraud practiced upon his associates.

The correctness of the decree adjudicating the interests of the plaintiffs does not depend upon notice to the timber company of the partnership in fact. Where two or more persons, whether as actual partners or otherwise, engage in a joint enterprise to buy land or the timber thereon for sale and profit, relationship of trust and confidence is thereby established, requiring good faith and fair dealing between the parties. Smith, Law of Fraud, section 111, 102, and 23; *Miller* v. *Ferguson,* 107 Va. 249 (57 S. E. 649); *Polls* v. *Fitch,* 47 W. Va. 63; *Hamilton* v. *McKinney,* 52 W. Va. 317; *Nease* v. *Capehart,* 8 W. Va. 95; *Currence* v. *Ward,* 43 W. Va. 367; *Criss* v. *Criss,* 65 W. Va. 683; *Floyd* v. *Duffy,* 68 W. Va. 339 (69 S. E. 993), decided this term.

This relation of trust and confidence being once established no subsequent dealings with the trust subject by either of the parties while such relationship continues, can, as between trustee and *cestui que trust,* relieve it from the trust. *Vangilder* v. *Hoffman,* 22 W. Va. 1; *Lawrence* v. *Du Bois,* 16 W. Va. 443;

*Murry* v. *Sell,* 23 W. Va. 475; *Currence* v. *Ward,* 43 W. Va. 371; *Floyd* v. *Duffy, supra.*

Where parties so engage in a joint enterprise, to buy and sell real estate, or the timber thereon, and one of them takes title thereto in himself pursuant to agreement, or fraudulently acquires it, and, with notice to him, attempts to reconvey or release the property, the subject of the joint enterprise, to the vendor, in fraud of the rights of the parties, equity will impress the property with the trust, in the hands of the party so acquiring the property, and enforce the trust. *Polls* v. *Fitch, Criss* v. *Criss,* and *Floyd* v. *Duffy, supra.*

In such cases of express trust the statute of frauds has no application. *Miller* v. *Ferguson, Currence* v. *Ward,* and *Floyd* v. *Duffy, supra.* And the weight of authority is that verbal contracts of partnership to buy or to deal in real estate is not within the statute of frauds. 1 Collyer on Partnership, (6th Ed.) section 1, page 7; 1 Bates on Partnership, section 302; Browne's Statute of Frauds, (5th Ed.) section 262; *Archibald* v. *McNerhanie,* 29 (Can.) S. C. 564; *McElroy* v. *Swope,* 47 Fed. 380; *Bates* v. *Babcock,* 95 Cal. 484; *Meagher* v. *Reed,* 14 Col. 339; *Speyer* v. *Desjardins,* 144 Ill. 641; *Van Housen* v. *Copeland,* 180 Ill. 74; *Home* v. *McCray,* 51 Ind. 358; *Richards* v. *Grinnell,* 63 Ia. 44; *Jones* v. *Davies,* 60 Kan. 309; *Garth* v. *Davis,* 27 Ky. L. Rep. 505; *Fountain* v. *Menard,* 53 Minn. 443; *Newell* v. *Cochran,* 41 Minn. 374; *Hirbour* v. *Reeding,* 3 Mont. 15; *Chester* v. *Dickerson,* 54 N. Y. 9; *Babcock* v. *Read,* 99 N. Y. 609; *Ostrander* v. *Snyder,* 73 Hun. 378; *Flower* v. *Barnekoff,* 20 Ore. 132; *Davenport* v. *Buchanan,* 6 S. D. 371; *Case* v. *Seger,* 4 Wash. 492.

The receivership, under the facts and circumstances proven in the case, we think was proper, and we perceive no error in the decree appointing the special receiver.

A slight error in the decree is practically conceded. The decree, inadvertently, in the eighth finding, "holds that in the event said *land and* timber is sold on account of said vendor's lien, that any surplus remaining and above the $250,000.00, the purchase price based on 100,000,000 feet of standing timber, mentioned and set out in the said contract of October 3, 1905, would belong to plaintiffs and to the Harpers Ferry Timber Company, &c." Literally interpreted the decree might

be construed to give plaintiffs and the timber company an interest in the surplus proceeds of the sale of the *land* as well as the *timber,* which would of course be error. But as the bill sought no such relief, and this part of the decree would be inconsistent with other provisions thereof, the decree should and will be corrected, by omitting from the clause quoted the words "land and".

As so corrected, and for the reasons given, the decree will be affirmed, with costs to the appellees.

*Affirmed.*