## CLOVER G. IRVINE v. H. A. CAMPBELL.[1]

April 18, 1913.

Nos. 18,073—(29).

**Joint adventure — enforcement of interest.**

Defendants secured the right to sell certain real estate, rapidly rising in value, at a price less than its value, and, by guaranteeing the repayment of all advances, with interest, and agreeing to make a resale of the property, induced I. to purchase and hold it for the purpose of such resale under an agreement that, at the sale, I. should receive back his advances, with interest, and the net profits be equally divided. *Held:*

(1) That defendants and I. were engaged in a joint adventure.

(2) Their respective rights in the real estate were similar to those or partners.

(3) I. held the real estate in trust for the purposes of the adventure.

(4) At the decease of I. the real estate descended to plaintiff, his heir at law, subject to the trust.

(5) Defendants are entitled to enforce the trust, to the extent necessary to

[1] Reported in 141 N. W. 108.

secure their share of the profits, as against plaintiff, who has refused to sell for full value to a proffered purchaser, and who has repudiated the trust; and the trial court erred in holding that they had no interest in or lien upon the property.

Action in the district court for Ramsey county to determine adverse claims to vacant and unoccupied city lots. The answer of defendant Campbell set out the written agreement referred to in the opinion, and prayed that it be adjudged a valid lien upon the premises and that the same be sold under the direction of the court and the proceeds distributed pursuant to the terms of the contract. The reply admitted an agreement between the father of plaintiff and defendant Campbell and another, and alleged that the acknowledgement thereof was not made until long after the death of plaintiff's father, when the instrument was filed for record and clouded the record title to the property. The case was tried before Dickson, J., who found that plaintiff was the owner in fee simple of the premises and that defendants had no interest therein, and ordered judgment accordingly. From an order denying defendant Campbell's motion for a new trial, he appealed. Reversed.

*William G. White,* for appellant.

*T. R. Kane,* for respondent.

TAYLOR, C.

This is an action to determine adverse claims to certain lots located in an addition to the city of St. Paul. The defendant Campbell answered, asserting an interest in the lots under the contract hereinafter set forth. The action was presented to the court upon a stipulated statement of facts, which, so far as here important, may be summarized as follows:

In 1905, the then owner of the lots authorized the defendants, who were real estate agents, to sell them for the sum of $325. The lots were then worth $750, and were so situated that the defendants believed they would increase rapidly in value. The defendants explained the situation to Clover G. Irvine, Senior, and proposed that he purchase the lots at $325 for the joint and mutual benefit of himself and the defendants; the defendants guaranteeing to him the re-

121 M.—13.

payment of the purchase price, with interest thereon. Irvine assented to this agreement, made the purchase, and, on October 14, 1905, the lots were conveyed to him by warranty deed. The defendants neither charged nor collected any commission from either party for negotiating the sale.

Clover G. Irvine, Sr., died on May 22, 1907, and all his interest in the lots descended to and vested in his son, Clover G. Irvine, the plaintiff herein, as his sole heir. All the interest of the defendant Lamberton passed to and vested in the defendant Campbell prior to the commencement of this action. In 1910 the defendant Campbell procured a purchaser who offered to pay $2,000 for the lots, and in 1911 he procured another purchaser who offered to pay $1,800 for them. Plaintiff not only refused both offers, but repudiated the contract as in any way binding either upon himself or upon the land. The lots are now worth $2,000.

At the time of making the purchase on October 14, 1905, Irvine and the defendants executed the following written agreement, which had been prepared by or at the direction of Irvine:

"This agreement, between Clover G. Irvine, party of the first part, and Campbell & Lamberton, parties of the second part, witnesseth: That in consideration of the said party of the first part purchasing lots 20, 21, and 22, of block 9, Merriam Park Third addition to the city of St. Paul, and paying for the same the sum of three hundred twenty-five dollars ($325), that said parties of the second part hereby agree to and with the said party of the first part to first guarantee to said party of the first part while his money is invested in said property the sum of seven per cent interest on the said investment over and above taxes and assessments that may hereafter be levied on said property; second, to sell the same for the said party of the first part without any brokerage commission; and if in case of sale of the said lots that the purchaser thereof requires a survey of said lots, that said parties of the second part agree to pay the expense of said survey.

"And it is further mutually agreed that upon the sale of said property that there shall be first deducted from the proceeds of said sale the sum of seven per cent to go to the said party of the first part,

for what time his money is invested in said property, and to pay all other charges or assessments that have been levied against said property, with interest thereon at seven per cent, and to divide equally between the said first party and the said second parties the balance of the net profits of said transaction.

"In witness whereof, we have hereunto set our hands and seals this 14th day of October, 1905.

"Clover G. Irvine.

"Campbell & Lamberton.

"A. M. Reckinger.

"S. A. Farnsworth."

The contract above set forth was evidently drawn by one not skilled in such matters, and is not as clear as might be wished. In the light of the attending circumstances, however, we gather from it that the property was purchased as a speculation, for the mutual benefit of both Irvine and the defendants, in the belief that it could soon be sold at a substantial profit, and for the purpose of so reselling it; that Irvine advanced the purchase price, and expected to pay the taxes and assessments that should be levied against the property while he held the title; that the defendants guaranteed the repayment to Irvine of all advances that should be made by him, together with 7 per cent interest thereon, and also assumed the burden of reselling the property without expense for their services, and of making a survey of the property at their own expense if such survey should be necessary to consummate a sale; and that upon the sale of the property Irvine should be repaid his advances, with interest, and any profits remaining after such repayment should be equally divided between Irvine, as one party to the venture, and the defendants, as the other party thereto.

While the written contract does not expressly state that the defendants guarantee the repayment of the original purchase price, nor that the original purchase price should be repaid before the division of the proceeds of the sale, the surrounding circumstances and the character and purpose of the transaction, the explicit provisions for interest and for assessments and charges, the absence of any provision indicating an intention to exclude the purchase price

from the amount to be repaid, and the provision that only the net profits of the transaction were to be divided, leave no doubt that the parties understood, intended, and agreed that Irvine should receive back all his advances, with interest, regardless of the price for which the property should be sold, and that the defendants were entitled to only one-half of whatever profits might remain after such repayment. The defendants expressly concede this, and the plaintiff apparently does not question it.

The project originated with the defendants. Their relations to the property and knowledge of the situation suggested an opportunity for profit. They induced Irvine to join with them in the venture, and the property was purchased for the purpose of being resold as soon as the expected profit could be realized. To promote the enterprise the defendants assumed financial and other obligations and contributed their knowledge of the situation and their services. They were more than mere agents of Irvine to sell the property.

Whether the contract, together with the acts of the parties in the furtherance of the enterprise, did or did not create a technical partnership, it did create rights and obligations akin to those of a partnership. The parties engaged in a joint enterprise for their joint and mutual benefit, and the relations between them were fiduciary in character and similar to those that exist between partners. Church v. Odell, 100 Minn. 98, 110 N. W. 346; Hodge v. Twitchell, 33 Minn. 389, 23 N. W. 547; Stern v. Harris, 40 Minn. 209, 41 N. W. 1036; Newell v. Cochran, 41 Minn. 374, 43 N. W. 84; King v. Remington, 36 Minn. 15, 36, 29 N. W. 352; Gasser v. Wall, 111 Minn. 6, 126 N. W. 284; Botsford v. Van Riper, 33 Nev. 156, 110 Pac. 705; Bond v. Taylor, 68 W. Va. 317, 69 S. E. 1000; Kauffman v. Baillie, 46 Wash. 248, 89 Pac. 548; Gamble v. Loffler, 28 S. D. 239, 133 N. W. 288; In re Kessler & Co. (D. C.) 174 Fed. 906; McDowell v. Joice, 149 Ill. 124, 36 N. E. 1012.

Real estate belonging to a partnership, whether the legal title be in one or more of the partners, is impressed with a trust for the benefit of the partnership, which follows it until it passes into the hands of a bona fide purchaser. Arnold v. Wainwright, 6 Minn.

241 (358), 80 Am. Dec. 448; Hardin v. Jamison, 60 Minn. 348, 62 N. W. 394; Stitt v. Rat Portage Lumber Co. 98 Minn. 52, 107 N. W. 824.

The same rule applies where the parties engage in a joint enterprise the subject-matter of which is real estate. Bond v. Taylor, 68 W. Va. 317, 69 S. E. 1000; Floyd v. Duffy, 68 W. Va. 339, 348, 69 S. E. 993, 33 L.R.A.(N.S.) 883; Botsford v. Van Riper, 33 Nev. 156, 110 Pac. 705; King v. Barnes, 109 N. Y. 267, 16 N. E. 332; Withers v. Pemberton, 3 Cold. (Tenn.) 56; Davis v. Kellar, 74 S. W. 1100, 25 Ky. Law Rep. 279; Fueschsel v. Bellesheim, 14 N. Y. St. 610; Crenshaw v. Crenshaw (Ky.) 61 S. W. 366; Kauffman v. Baillie, 46 Wash. 248, 89 Pac. 548; Jones v. Davis, 48 N. J. Eq. 493, 21 Atl. 1035.

In the present case the parties sought to take advantage of the favorable terms upon which the lots in question could be acquired, and to secure to themselves the anticipated increase in value. They purchased the lots, intending to resell them as soon as the expected increase could be realized. The lots were the subject-matter with which they were dealing, and in a sense constituted their stock in trade. The legal title in the lots was held by Irvine in trust for the benefit of himself and his associates in the enterprise. Each party who engaged in the enterprise has the right to enforce this trust, so far as may be necessary to secure to himself his share of the proceeds of the venture.

The plaintiff is not a party to the contract in dispute, and the contract is not binding upon him personally; but the legal title to the lots devolved upon him by descent, and is subject to the same trust while held by him that it was subject to while held by his father.

The defendant Campbell has the right to enforce this trust, as against the plaintiff, to the extent necessary to secure to himself his share of the profits of the transaction. To this extent he has an interest in or lien upon the lots, and it was error to direct a judgment barring him from any such interest or lien.

The order appealed from is reversed.