## CHARLES W. BRUNER v. CHARLES P. JACOBSON.[1]

June 6, 1913.

Nos. 18,064—(154).

**Contract of agency construed.**
1. The contract construed in Bruner v. Jacobson, 115 Minn. 425, further construed, and *held* an agency contract for the sale of land, and as entitling plaintiff, the agent, to one-half the net profits from such sale, but not to one-half the value of the land, the subject matter of the agency, which was deeded to defendant, since defendant has not perfected title to the same. Until such title is perfected by the payment of the purchase price, there are no profits to divide between the parties.

**Damages.**
2. The question whether plaintiff is entitled to damages for the breach of the contract by defendant is not involved in the action.

Action in the district court for Hennepin county to recover $8,-150, alleged to be one-half of the net proceeds which plaintiff and defendant would have made by a sale of certain premises which defendant agreed to purchase from one Grant. The complaint alleged that the purchase was made by defendant for the joint benefit of plaintiff and defendant, and it was agreed between them that plaintiff had and should have an interest in the land, should be entitled to the profits mentioned, and should have a lien upon the land for the amounts which should become due under the terms of a written agreement between them which was set out in the complaint and is quoted in the opinion. The answer expressly denied that the pur-

[1] Reported in 141 N. W. 1097.

chase of the land was made for the joint benefit of plaintiff and defendant, and alleged that it was made for the sole benefit of defendant. The answer set out the notice of cancelation of contract by Grant & Rose; that upon service of such notice plaintiff was at once advised by defendant and notified that he could not sell any of the lots, and set up a counterclaim for $800 for money collected and expenses incurred. The reply alleged that the money retained was a part of what was due plaintiff on account of the profits arising from the sales. The case was tried before Booth, J., who made findings and as conclusion of law ordered judgment in favor of plaintiff for $7,155.75, one-half of the net profits. From an order denying defendant's motion to re-open the action for the purpose of introducing further evidence and from an order denying defendant's motion for a new trial, he appealed. Reversed.

C. A. Bucknam and A. B. Jackson, for appellant.

John F. Byers and Charles J. Traxler, for respondent.

BROWN, C. J.

Some time in May, 1907, defendant entered into an executory contract with Donald Grant, trustee, for the purchase of a tract of land situated in the district known as Prospect Park, Minneapolis, agreeing to pay therefor at stated times in the future the total sum of $20,000; $2,000 being paid at the date of the contract. Defendant's attention was brought to the land, and he was induced to make the purchase in part at least by plaintiff, who was familiar therewith, and believed that by platting the land into lots and selling the same large profits could be realized. In June, following the making of the contract, plaintiff and defendant entered into the following agreement:

"In consideration of services rendered in procuring for me at the price of twenty thousand dollars ($20,000) on the terms and conditions set forth in the contract made with Donald Grant, trustee, for the tract of land to be known as Prospect Park Heights Addition to Minneapolis; and for the further services to be rendered in the future in directing, platting and selling lots in said addition, and assisting in the selling thereof, I hereby agree to pay George W. Bruner

as the work progresses, either by or through him, or by myself, one-half ($\frac{1}{2}$) of the net profits derived therefrom; and I hereby authorize and empower said George W. Bruner and appoint him my agent to sell, name and fix prices of said lots, together with terms and conditions, and will furnish an abstract and convey the title to any person to whom he effects a sale, subject to my approval. It is understood that payments on the contract shall be made first by cash money derived from sales of lots, and no money drawn until such terms on contract is satisfied; and that both parties shall use their best efforts possible at all times to effect the sale of this property."

Plaintiff advanced no money for the purchase of the property and assumed no pecuniary obligations in the transaction. Defendant made the initial payment of $2,000, and personally obligated himself to pay the balance. The land was platted and one or two sales of lots made, either by plaintiff or defendant. The first deferred payment on the purchase contract came due and was not made. Defendant was without means. The parties, when the enterprise was entered upon, contemplated that sufficient lots could be sold to meet the payments as they matured, but their hopes and expectations in this respect were not realized. Grant, trustee, assigned his interest in the purchase contract to Grant & Rose, and a notice of cancelation of the contract for the failure to pay the first instalment of the purchase price was given by that firm. The notice was in the usual form and required the payment to be made within 30 days. It was not made. This notice was served on October 22, 1907. Defendant endeavored to obtain an extension of the time of payment, but it was refused by Grant & Rose, and they entered into possession of the property in November, 1907, and sold a number of lots. Thereafter both plaintiff and defendant made efforts to adjust matters with Grant & Rose but with no avail. Members of that firm continued selling lots until February, 1909, when they brought proceedings under the Torrens statute to register title to the land, one object thereof being to extinguish all rights of defendant under the cancelled purchase contract. Defendant appeared in that proceeding and secured a dismissal, after trial on the merits, upon the ground that the notice of

cancelation was defective and ineffectual as a termination of the contract.

Thereafter, in July, 1909, defendant and Grant & Rose, for the purpose of settling all rights and differences between the parties, entered into a new contract by the terms of which defendant withdrew all opposition to the registration of the title to the land in Grant & Rose, and to that end defendant agreed to and did withdraw his answer in said proceeding and consented to the entry of judgment therein confirming their title, at the same time executing to them a quitclaim deed to certain of the lots. In consideration of the agreement Grant & Rose conveyed to defendant 47 of the lots, for which defendant agreed to pay them the sum of $3,855; to secure which defendant executed to Grant & Rose a mortgage upon the lots so conveyed to him. Upon the consummation of this contract, by the execution of the deeds and mortgage, all rights under the former contract ceased and ended. Defendant employed an attorney to represent him in the registration proceedings, and the attorney recovered judgment against him for something over $3,000 for his services. This judgment was docketed and became a lien upon the lots so conveyed to defendant. Other judgments were recovered against defendant which also became liens upon the lots. Execution was issued under the attorney's judgment and some of the lots sold thereunder, from which defendant redeemed, the funds therefor being obtained from one Johnson on defendant's agreement to sell to him 30 of the lots for $5,000. The Grant & Rose mortgage was foreclosed in October, 1911, from which at the time of the trial in March, 1912, no redemption had been made, except as to two of the lots. Some of the lots were sold on execution in favor of one Wright, in April, 1911, and no redemption had been made at the time of the trial.

It was stated by defendant's counsel on the argument that defendant had lost title to all the lots by his failure to make redemption from these various sales. But whether this be so or not we do not deem of special importance. The fact remains that at the time of the commencement of the action, as well as at the time of the trial, no profits had been realized by defendant from lot sales, and unless

the settlement agreement of July, 1909, under which, in consideration of permitting the registration of title to the lots in Grant & Rose, defendant acquired title to 47 of the lots, subject to the purchase-money mortgage and judgment liens, together with the act of defendant in excluding plaintiff from further participation in the matter, be treated as closing the relations between plaintiff and defendant, and as entitling plaintiff to an interest in the lots so acquired, it seems clear that plaintiff is not entitled to the relief demanded. The trial court treated the lots, to which defendant acquired title by the settlement of 1909, as profits, and judgment was awarded to plaintiff for one-half the value thereof, less the encumbrances, and defendant appealed from an order denying a new trial.

1. The question whether plaintiff is entitled to the relief so granted by the court below depends largely upon the construction to be given the contract between the parties. The contract is set out in full above. It was before us on a former appeal, wherein it was contended by plaintiff that it created the relation of copartners, entitling plaintiff to relief as such. This view of the contract was not sustained. 115 Minn. 425, 132 N. W. 995. It was there held that the findings of the trial court that the contract did not create that relation were fully supported by the evidence. And, further, the court then treated the contract as creating the relation of principal and agent, and that plaintiff might, in a proper action, have such relief as the facts warranted. But whether on the present record it may be held that the parties were engaged in a joint adventure, or stood in the relation to each other with respect to the property of principal and agent, is not important for the result must be the same in either situation. Defendant had $2,000 which he was induced to invest in this tract of land, with a view to platting the same and selling the lots so platted and dividing the net profits equally between the parties. Plaintiff advanced no money in the transaction, and it was the expectation of the parties that a sufficient amount could readily be realized from sales to provide for the payment of the purchase price of the property as it matured.

Whatever relation was created by the contract, the rights of the parties were thereby clearly defined. It was there expressly pro-

vided that the purchase price of the lots should be paid from the proceeds of lot sales, and that neither party should be entitled to any part of such proceeds until the same was paid in full. By the language of the agreement, plaintiff was appointed defendant's agent to sell and dispose of the lots, and he was to have for his services one half of the net profits. If no profits were realized, plaintiff would not be entitled to any compensation for his services. That no profits, within what the parties contemplated by the contract, were ever realized seems clear. Defendant incurred considerable expense in defending the title in the registration proceedings, judgments were recovered against him for debts thus incurred and which legitimately became a proper charge against the land to the exclusion of plaintiff's right to share in the net profits. The purchase price of the property, that part of it acquired on the settlement in 1909, has never been paid, the land was sold on execution issued upon the judgments against defendant, from one of which he redeemed, apparently by being obliged, for want of funds, to sacrifice 30 of the lots to Johnson for $5,000; with money so raised the redemption was made. Some of the lots were lost as the result of another execution sale, involving an indebtedness which was a proper charge upon the land as against plaintiff, and all the lots were included in the foreclosure of the purchase-money mortgage. No redemption from that had been made at the time of the trial. The result of all this is that defendant has lost the original investment of $2,000, and is in a fair way of losing all under the mortgage foreclosure. He has, as yet, no profit, net or otherwise, to divide with plaintiff, and, unless he has redeemed from the mortgage sale since the trial, he will realize nothing from the investment.

In view of this situation, it would seem inequitable and unjust to compel him to pay to plaintiff one half the value of the lots deeded to him as the result of the settlement in 1909, title to which he has not been able to perfect free from the mortgage and other liens. The contract did not require defendant at his peril to perfect the title from his own funds, or from funds to be borrowed, and in default thereof respond to plaintiff for profits. The contract made did not so provide. On the contrary it expressly provided that, before the

right to share in profits should accrue, the purchase price of the land should be paid from lot sales, and on this understanding both entered into the venture. The venture failed, the lots have not been so paid for, no profits at the time of the trial had accrued, and we think the learned trial judge erred in holding to the contrary.

2. The question whether defendant wrongfully excluded plaintiff from participating in the sale of lots after the settlement of 1909, is not involved in the action. Neither are we concerned with the question whether plaintiff is entitled to compensation for services as an agent of defendant, or damages for defendant's alleged breach of the contract. The action is predicated upon the contract and a claim that profits have been realized thereunder of which plaintiff is entitled to a share. If plaintiff is entitled to recover damages for a breach of the contract, an action therefor should be brought. This action cannot be treated as such, for it proceeds solely upon the contract and on the theory of a right to profits.

3. The case is clearly distinguishable from Irvine v. Campbell, 121 Minn. 192, 141 N. W. 108. In that case the contract gave each party an interest in the property; it was a joint adventure. In the case at bar plaintiff was, by the express terms of the contract, entitled to share in the profits after the purchase price of the property had been paid from the proceeds of lot sales and not before.

The other cases cited by plaintiff are not in point. While the contracts shown in some of them were similar to this one, it there appeared that title to the property became fully vested and a surplus either in property or money was shown. The most the evidence shows in the case at bar is an extremely hard struggle on the part of defendant to acquire the property, and up to the time of the trial a failure. It is probable that the court would have been justified in requiring defendant to deed to plaintiff a one-half interest in the lots, had such relief been asked for, subject to the incumbrances thereon. But it seems clear that defendant should not be required to pay to plaintiff one-half the value of the lots, less incumbrances, since the purchase price of the land has not been paid as stipulated by the contract.

The order denying a new trial is reversed.