ROBERT L. BLAND, Judge.
By agreement of counsel for claimants and the special assistant attorney general these claims were heard together and the matters arising upon them respectively will be considered in a single opinion.
The claims are prosecuted in this court on the theory that in the year 1934 one T. S. Ray, then superintendent of a prison labor camp in Clay county, West Virginia, purchased from claimants B. F. Morton, G. S. Johnson, assignor of Sizemore Brothers, and A. B. & J. G. Mullins, certain lumber for the use and benefit of the state road commission, that the state accepted and received the benefit of said lumber and never made payment therefor, and that in equity and good conscience it should make such payments. The state, on the other hand, takes the position that the lumber for which awards are sought was sold to the state, not by Morton, Johnson and Mullins, but by one N. Kinniston, to whom payment in full was made for such lumber.
Claimant B. F. Morton seeks an award of $75.00, which amount he claims to be the balance due on account of 10,000 feet of bridge flooring sold by him to the road commission, at $20.00 per thousand feet. Claimant, W. E. Sizemore, as Sizemore Bros., assignee of G. S. Johnson, seeks an award for 4363 feet of oak lumber at $18.00 per thousand feet and 1894 feet of oak lumber at $20.00 per thousand feet, making a total of $116.41. Claimants A. B. & J. G. Mullins, seek an award of $780.00, claimed to be the balance due them on account of 30,000 feet of oak lumber sold to the state at $20.00 per thousand feet. Each claimant also seeks interest on the amount claimed to be due for which an award should be made. Interest, however, could not be allowed under the court act if awards were made.
The same witnesses testified in support of each claim insofar as it was intended to show that a contract between claim *182 ants and the state existed. We do not think, however, that such evidence shows that T. S. Ray was acting on behalf of the state or that he had authority to purchase said lumber and make the state liable for its payment. At most it only appears from the record that Ray was superintendent of prison labor in Clay county. There is not even a presumption that he was agent of the state to purchase the lumber in question. There is no proof to show the existence of such agency. The most careful and analytical consideration of the evidence fails to show that claimants have established that T. S. Ray was the agent of the state for the purpose of purchasing lumber, or that he did actually as such alleged agent purchase said lumber, for which claimants seek awards, for the state. One dealing with an agent of the state is bound to know the extent of the' authority of such agent. Where a person deals with an agent, it is his duty to ascertain the extent of his agency. He deals with him at his own risk. The law presumes him to know the extent of the agent’s power; and, if the agent exceeds his authority, the contract will not bind the principal, but will bind the agent. Rosendorf v. Poling, 48 W. Va. 621. The general rule is that one dealing with an agent is bound at his peril to know the agent’s authority. Uniontown Grocery Company v. Dawson, 68 W. Va. 322.
Claimants introduced J. M. Lorentz, who was maintenance superintendent for Clay county in 1934, as a witness in support of their claims. His testimony throws much light upon the situation. He testified that G. S. Johnson, assignor of Sizemore Bros., had an order from N. Kinniston; that Ray looked after her business; that along about that time she did quite a lumber business with the state, and that it was “hard to beat her out of an order”; that the purchase order for the lumber in question was from said N. Kinniston; that she paid Johnson $20.00 per thousand and sold the lumber to the state for $30.00 per thousand and that later she and Ray intermarried.
*183 When Claimant Morton claimed to have contracted with Ray for the lumber the Kinniston woman was with Kim. (Transcript, p. 11). Later when he was trying to get payment for the lumber he found Ray and the Kinniston woman together at Charleston. (Transcript, p. 12). She took part in the negotiations. (Transcript, p. 11). When Ray talked with Morton about buying lumber “there was a lady with him, when he was up there a time or two.” (Transcript, p. 11). She was present when the order was given for the lumber.
It is made clear from the evidence that a close relationship existed between Ray and the Kinniston woman prior to their marriage, that they were frequently together, and that in the case of the claim of B. F. Morton two separate payments were made to him, not by the state road commission, but by the personal check of said Ray, amounting in the aggregate to $150.00. We are impressed by the thought that the association of Ray and the Kinniston woman was of such a nature and character as to put claimants upon notice in their dealings with them.
The evidence submitted in opposition to the claims shows conclusively that the lumber for which the three claimants seek awards was sold by the said N. Kinniston to the state and that she was paid in full therefor. As we view the situation no question of fraud arises between the state and the claimants. If any fraud were perpetrated it was by N. Kin-niston. At the time that the lumber was sold the statute expressly provided how bids should be submitted and contracts entered into for the purchase of said lumber. This method seems to have been observed by the Kinniston woman. She submitted her bids and received purchase orders. She furnished the lumber to the state and was paid in full for the contract price thereof. It is reasonably apparent that the lumber of claimants was sold to the Kinniston woman and that she in turn sold it to the state. She received from the state the price which it contracted to pay her for said lumber, but failed to make settlement with those from whom she purchased it. *184 We see no reason, therefore, why the state should pay twice for the same lumber.
The very purpose of the creation of the court of claims was to provide a method for the careful investigation of claims asserted agaiinst the state to the end that proper recommendation should be made to the Legislature concerning them. If we should make awards in favor of these claimants for the amounts asked by them we would establish a precedent that would “lay down the bars” and afford opportunity for all manner of claims to be filed in this court. We can extend our sympathy to the claimants in the unfortunate predicament in which they find themselves on account of the transaction which they had for the sale of their lumber, but under the evidence offered in support of said claims we cannot see that they are entitled to call upon the state for the payments which should have been made by the Kinniston woman. The claimants should have been governed by the law if they intended to sell their lumber to the state. They should have submitted bids and received orders of purchase from the state. The evidence does not show that the claimants, or either of them, made any inquiry for the purpose of ascertaining whether or not Ray had authority to make purchase of lumber for the state and bind the state for payment. The transaction in each case was loosely and indifferently conducted.
Recommendations for the payment of public revenues are not properly to be indiscriminately made. If the court of claims were to do so its usefulness as a special instrumentality of the Legislature would soon be at an end.
Majority members of the court are of opinion that claimants did not, in fact, sell their lumber to the state, that they have wholly failed to establish the agency of Mr. Ray to purchase said lumber, and that the claims should be denied and dismissed.
*185 An order will, therefore, be made by a majority of the court denying the three above captioned claims and dismissing the same from the docket of the court.
Judge Schuck reserves the right to file a dissenting opinion.