## CATHERINE SHANAHAN v. OLMSTED COUNTY BANK AND TRUST COMPANY.[1]

May 19, 1944.

No. 33,760.

[1]Reported in 14 N. W. (2d) 433.

*Obed E. Eastvold* and *Christensen & Ronken,* for appellant.

*J. T. Scanlan, I. L. Eckholdt,* and *William B. Richardson,* for respondent.

HOLT, COMMISSIONER.

Plaintiff appeals from a judgment in favor of defendant as administrator of the estate of J. W. Shanahan, deceased. The main facts on which this lawsuit rests are not in dispute. In 1890, two brothers, living with their parents in Olmsted county, this state, bought a 160-acre farm in the adjoining township of High Forest and began farming. The deed to the farm ran to both. The elder of the two, Patrick J. Shanahan, was then 28 years old, and the younger, J. W. Shanahan, was 18 years old. In 1892, a nearby

160-acre farm, in section 4 of said township, was purchased. On this farm was an old dwelling house, a barn, and other buildings. This farm was thereafter known as the "home place" and will hereinafter be referred to as the home farm. The deed thereto ran to J. W. Shanahan. Thereafter additional farms were purchased in said township, the deeds running to both brothers, so that, including the home farm, they were farming 800 acres in 1930, when Patrick died. In 1894 or 1898 (the record is uncertain), plaintiff married Patrick, who, in addition to being a farmer, was a practical carpenter. He remodeled the dwelling on the home farm and added to the other farm buildings thereon. Patrick made a will shortly before his death. He was then at a hospital in Rochester. In it he bequeathed $1,000 to each of his four children and made plaintiff and his brother J. W. residuary legatees, share and share alike. In 1940, J. W. died intestate in a hospital at Rochester. He had never married. The evidence shows that the two brothers worked side by side in their farming operations. They raised and sold hogs and cattle as part of their farming. They had their own threshing rig, Patrick attending to the separator and J. W. to the engine. From the time of her marriage, plaintiff managed the household, doing the work thereof, cared for the poultry, and did the work usually done by a farmer's wife, without any compensation. As the children grew up, they also were required to do such work and chores as they were able to do. There is no evidence that they ever received any compensation except the bequests in their father's will. Until his last illness, J. W. was always a member of the family of Patrick and his wife. In their farming venture the two brothers received no help by way of any inheritance. All came from their own earnings. Patrick may have been able to earn something after attaining full age. J. W. could not have been able to earn much of anything. There is no evidence of his emancipation. In all their farming operations no separation of what was produced on the farm was made. All grain raised went into the same bins in the granary.

Patrick's estate was probated promptly and the decree of distribution made and filed in 1931. In the safety deposit box of Michael Shanahan, a brother named by Patrick as his executor, were certificates of deposit aggregating $27,000, payable to the order of Patrick J. and J. W. Shanahan, or either of them, and to the survivor of either of them. However, none of these certificates were inventoried in Patrick's estate, nor was the home farm. This lawsuit concerns only these two items, viz., plaintiff's interest in the $27,000 certificates of deposit and in the home farm or its proceeds, because, in the settlement of J. W.'s estate, the home farm was sold under license from the probate court.

■ The trial court found (finding II), and could not well have found otherwise, that the two brothers, Patrick J. and J. W., conducted the home farm and the other real estate purchased as a "farming partnership." The only part of this finding which is challenged is the last sentence: "That the profits thereof were placed in the form of certificates of deposit under new arrangement whereby upon the death of one the property would go to the other." There is no evidence whatever of any such arrangement or agreement between the two brothers. What evidence there is in the record tends to negative the existence of such new arrangement. A checking account was kept in the local bank in the names of both. When the amount subject to check was larger than deemed necessary, the excess was drawn out and placed in certificates of deposit bearing interest at the rate of three percent or more. The evidence also shows that when the so-called Kelly farm was purchased it was in part paid for by certificates of deposit worded the same as the $27,000 here in suit. It stands to reason that Patrick with a wife and children depending on him would not knowingly make an arrangement by which his accumulations would go to his unmarried brother in the event of Patrick's death. The only object was for the convenience of the survivor in reaching the funds of the partnership to close up the partnership business and in the meantime receive the interest on the certificates not obtainable on the checking account.

■ The home farm was conveyed to J. W. alone. The title rested in him until his death. Plaintiff knew this within a year or two after her marriage to Patrick. Patrick as a carpenter did all the remodeling and new construction work on the home farm, and the court found that the money needed for the lumber and material for this improvement came from the partnership. So, also, the partnership funds paid the tax on the home farm as well as the tax on the rest of the farms.

Most of the real estate, if not all, was acquired before the enactment of the uniform partnership act in this state. Prior thereto, a partnership could not take title to real estate, and the land needed for partnership use had to be taken in the names of the individual partners or in the name of one of them. Under the uniform partnership act, the title to partnership real estate may be taken in the name of a member. Minn. St. 1941, § 323.09 (Mason St. 1927, § 7393[3]). A quite full discussion of the modification made by the uniform partnership act in the partnership law as it existed prior thereto is found in Windom Nat. Bank v. Klein, 191 Minn. 447, 254 N. W. 602.

■ The plaintiff particularly challenges the conclusion of law that "said certificates of deposit are not partnership property in any partnership enterprise in which Patrick J. Shanahan and Joseph W. [J. W.] Shanahan were partners but are the property of said Joseph W. Shanahan by virtue of the wording of the certificates," and the like conclusion in respect to the home farm, that it was not the property of the partnership but the individual property of Joseph W. Shanahan from the time of its purchase until the time of his death. We reach the conclusion that both are erroneous. There is no doubt that the money in the checking account came from the sale of the products of the farms. There can be no presumption that by putting money in the form of certificates of deposit there was any intention to change the ownership of the partnership property. The same with respect to the home farm. The initial payment was small, for a purchase money mortgage was given for the greater part of the price. The court found that part-

nership funds were used for improvements, that Patrick did most of the remodeling and building thereon, and that the materials needed were bought with partnership funds. No doubt the mortgages placed thereon were paid by partnership funds. The source of the funds for the purchase of the home farm was the money made in farming the 160-acres bought in 1890, in which both brothers were grantees. So we also conclude that the court erred in its conclusion of law III, *viz.:* "That there is no proof by a fair preponderance of the evidence that any part of the purchase price of said property [home farm] was paid by Patrick J. Shanahan." The burden of proof was on J. W. or his representative to show that the purchase price of the home farm was not paid out of partnership funds. Hardin v. Jamison, 60 Minn. 348, 62 N. W. 394; Irvine v. Campbell, 121 Minn. 192, 141 N. W. 108, Ann. Cas. 1914C, 689.

■ Error is assigned on the conclusion of law that no "accounting of said partnership has ever been made nor is the evidence presented sufficient to permit the adjudicating of the operations of said partnership." It is sufficient to say that such a defense was not pleaded.

■ Another conclusion of law assigned as erroneous is "that plaintiff is estopped by her actions or lack of action from claiming any of the above property as partnership and that her claims are barred by laches. Also by statutes of limitation." It is difficult to see how this conclusion of law could be made in view of the allegations in the answer to both of plaintiff's causes of action, *viz.:* "That the plaintiff is estopped from claiming anything by way of a recovery herein for the reason that after the death of said P. J. Shanahan, the plaintiff and said J. W. Shanahan, Sr., carried on any and all business that might prior thereto have been carried on by said J. W. Shanahan and said P. J. Shanahan during the lifetime of the latter." The record indicates those allegations to be absolutely true. It really appears as if J. W. Shanahan accepted plaintiff as a partner in the farming partnership in place of her deceased husband. Notwithstanding the probating of Patrick's

estate, the farming of the 800 acres went on as before Patrick's death. Crops were harvested, hogs and cattle raised and sold, all proceeds going into a common fund and plaintiff and her children and J. W. Shanahan doing the work and living as one family.

The home farm being partnership property, it was continuously in the possession of Patrick J., plaintiff, his wife, and J. W. Shanahan; and Minn. St. 1941, § 541.02 (Mason St. 1927, § 9187), and decisions on that proposition are not here applicable. We fail to see how any statute of limitations bars plaintiff's right of recovery.

The judgment is reversed and the cause remanded for a new trial.

