FRED GORDER & SON, APPELLEE, v. HERMAN E. PANKONIN, APPELLANT.

FILED JANUARY 9, 1909. No. 15,418.

1. **Specific Performance:** RENEWAL OF LEASE: DESCRIPTION OF PROPERTY. In an action brought to compel the specific performance of a covenant to renew a lease, the fact that the description of the property in the lease is indefinite will not defeat the plaintiff's right to have the same specifically performed, where it appears that both parties have, without question, acted under said lease, the defendant surrendering, and the plaintiffs accepting, certain specified property as being the property described in said lease.

2. **Partnership:** NEW PARTNER. While the sale of his interest to a stranger by one member of a partnership does not make such stranger a member of the firm, there is no rule of law forbidding all the members of a firm from agreeing to admit a new member as a partner therein.

3. **Statute of Frauds:** PARTNERSHIP: NEW PARTNER. Where by agreement between all the partners a new member is admitted to the firm, he acquires an interest in the partnership property by operation of law; and such transfer is not within the statute of frauds.

4. **Specific Performance:** LEASE: RENEWAL BY PARTNERSHIP. In an action by a partnership for the specific performance of a covenant to renew a five-year lease, it is immaterial that at certain times during the first term of said lease other persons held an interest in said partnership, where the persons who constituted the partnership at the time of demanding such renewal are the same persons who were members of the firm at the time of the execution of the lease.

5. **Estoppel:** LEASE: ACCEPTANCE OF BENEFITS. Where a lessor has accepted the benefits of a lease made by him to a partnership, he cannot, in an action by such partnership to enforce the specific performance of a covenant to renew, plead that the partnership was without capacity to take the legal title to real estate.

6. **Specific Performance:** REMEDY AT LAW. Where a plaintiff purchases a stock of goods and the good will of a business, at the same time taking a lease of the premises in which said business has been carried on, for a term of years, with an option to renew

at the end of said term, he is not confined to an action at law for damages in case of the landlord's refusal to fulfil the covenant to renew, but may maintain an action in equity for the specific performance of such covenant.

APPEAL from the district court for Cass county: PAUL JESSEN, JUDGE. *Affirmed.*

*D. O. Dwyer* and *A. L. Tidd,* for appellant.

*Byron Clark, contra.*

CALKINS, C.

The defendant was a dealer in implements and harness in the village of Louisville. He occupied a store upon lots numbered 262 and 263, and had warehouses and buildings on lots 293 and 294. On the 13th day of February, 1901, he entered into a contract to sell to the firm of Fred Gorder & Son his stock of goods, excepting only pumps and windmills, and to rent the buildings upon said lots 262 and 263, together with all warerooms occupied for storage purposes, reserving an office room in the main building. The rent was to be $22 a month for a term of one year, with the privilege of five years or more. The vendor further agreed not to engage in the implement or harness business in Louisville so long as the vendee should rent said property. On the 15th day of February the parties entered into a more formal lease, for a term of five years from February 20, with an option to the lessees to, at the end of such term, renew for a period of one year or more up to five years. In this lease the property was again described as lots 262 and 263, with all the buildings, warehouses and out buildings "which are now occupied by said party except one room in the southwest corner of the main building therein located, which said room was then occupied by S. W. Ball and used as a barber shop." On the 12th day of September, 1902, the parties entered into an agreement which purported to be additional and supplemental to the agreement of February 15, 1901, "providing

for the leasing of lots 262, 263, 293 and 294." It recited that it was made in consideration of the settlement of certain differences arising between said parties on account of a breach by the defendant of the conditions of the lease entered into on the 15th day of February, 1901. It stipulated that, in addition to the covenants in said former contract contained, the defendant was to have the use of one-half the building on lot 294, and $1.50 a month rent in addition to the $22 provided in the former contract and lease, and that the lessees were to pay the sum of $23.50 a month for the use of the buildings on lots 262, 263, 293, and one-half the building on lot 294. The lessees appear to have remained in possession of said premises and paid the stipulated rent until about the expiration of their term, when they gave to the defendant notice that they would avail themselves of the option to renew said lease for a term of five years from the 15th day of February, 1906. The defendant refused to renew the lease in accordance with said option, but notified the lessees to give up possession, and began a suit in the county court of Cass county charging the lessees with unlawfully and forcibly detaining possession of said premises, in which action a judgment of restitution was rendered. Thereupon the plaintiffs brought this action to enjoin the defendant from enforcing such judgment of restitution, and to compel the specific performance of the agreement to execute a lease for the additional term of five years. There was a judgment for the plaintiffs, and the defendant appeals.

1. Defendant alleges that the description of the property in the lease is too indefinite to enable the court to enter a decree for the specific performance of the agreement to extend the lease. It is to be observed that the lots 293 and 294 were not specifically described in the contract made in February, 1901; but in the supplemental contract made in September, 1902, this uncertainty was supplied by the reference to the February contracts as being contracts for the leasing of the four lots mentioned. It is the rule that, where the contract is ambiguous, the court will

generally follow the interpretation placed upon the same by the parties themselves. *Davis v. Ravenna Creamery Co.*, 48 Neb. 471; *Hale v. Sheehan*, 52 Neb. 184; *Lawton v. Fonner*, 59 Neb. 214; *State v. County Commissioners*, 60 Neb. 566. We are satisfied that, where a lessor surrenders possession of property imperfectly described in the lease, and the lessee accepts possession of such property as being the property intended to be let, neither party to the contract should be allowed to afterwards question the sufficiency of the description. In this case, however, the contract of September, 1902, includes the description of the two lots upon which the buildings mentioned in the first contract were situate. This supplies any defect that might have existed in the prior contract regarding the two lots in question.

It is contended that it introduced a new element of uncertainty, in that it provided that the defendant should have the use of one-half of lot 294, without specifying which half of said lot was intended. The defendant's answer alleges that the description in the lease is indefinite because it calls for a lease upon buildings, without particularly describing the land upon which they are situated. It does not plead the uncertainty in the specification of the half of lot 294. It sufficiently appears in the record that the parties themselves had no difficulty in determining which half each was to occupy. Had this question been raised in the case, it would have been the duty of the court to follow the interpretation put upon this clause by the parties, and it might, in its decree awarding an extension of the lease, have specifically described the half of lot 294 which was actually occupied by the plaintiffs under the lease. As there was no controversy presented in the court below regarding this matter, it was not necessary for the court to specifically describe the half to be awarded the plaintiffs, and its failure to do so does not make the judgment erroneous.

2. It appears that at the time of making the lease of February 15, 1901, the firm of Fred Gorder & Son was

composed of Charlotte Gorder, August Gorder and Fred Gorder, and that on February 3, 1902, John Gorder acquired a one-fourth interest in the business from August; that in May, 1904, August sold his remaining one-fourth interest to the other members of the firm; and that on February 19, 1906, John sold to Fred Gorder, and on the same day Fred sold to August, a one-half interest in the business. The defendant argues that each change in the membership of the firm operated as a dissolution of such firm and the formation of a new partnership, and that the plaintiffs could not maintain this action without showing an assignment of the lease in writing, sufficient under the statute of frauds to convey real estate, from the firm as it existed at the time of the making of the lease. It is said that an assignment of a partner's interest works a dissolution of the firm, and many authorities are cited to sustain this proposition. The reason for the rule is that a partner cannot introduce a new member into the firm without the consent of the other members, nor make them members of another firm; but there is no rule of law which forbids a partnership, with the consent of all its members, to admit a new member, and when members so taken in are recognized and treated by all as partners, and the business is continued with them under the original agreement, this is sufficient to make them partners, and does not work a dissolution of the firm. *Meaher v. Cox, Brainard & Co.,* 37 Ala. 201; *Rosenstiel v. Gray,* 112 Ill. 282.

3. In such case the new member has an interest in all the partnership property by operation of law. If the partnership has or is equitably entitled to an estate in land, such interest passes to the new member so admitted without any formal assignment. The statute of frauds expressly excepts from its provision transfers by operation of law.

4. Again, it appears that Charlotte Gorder, Fred Gorder and August Gorder were the sole members of the firm at the time of the commencement of this action, as well as at the time of the execution of the original lease. It is

hardly necessary to say that the fact that the shares held by them were in different proportion at the two dates is immaterial except as between themselves. If, therefore, the defendant's position that the right which the original firm had in the lease did not pass to the succeeding members were sound, it must have remained in the original members of the firm, who now constitute all the members thereof and are the persons in whose behalf this action is being prosecuted. Admitting, for the purpose of the argument that an assignment of the lease which should deprive the defendant of his right to resort to the property of all the members constituting the firm with which he made the original contract could not be made without his consent, that question does not arise. The firm which is asking a renewal of the lease is composed of the same individuals as the firm with which the defendant originally contracted, and a lease executed by the plaintiff firm gives to defendant everything in the way of security for performance by the lessees of their covenants that was contemplated at the time of the execution of the original lease, or which he is entitled to demand in any view of the case. It is entirely immaterial to the defendant that for some portions of the period of the original lease, for which he has received his stipulated compensation, some other persons than those constituting the firm at the time of making the contract, were interested therein as partners.

5. The defendant contends that, since a partnership may not take the legal title to an estate in land, the plaintiffs cannot maintain this action. It does not follow that, because a partnership cannot take the legal title to land, a lease to such partnership and the acceptance of rent thereunder by the lessor creates no rights in the partnership. In such case if the name of a natural person is included in the name of the partnership, such person will take the legal title in trust for the benefit of such partnership, and if there is not included in the designation of the firm the name of a natural person to whom such legal title would

17

pass, equity will regard the lessor, who had received the benefits of such attempted conveyance, as holding the legal title in trust for the partnership. In this case the defendant did not raise this question in his answer, and it was not, therefore, necessary for the district court to consider the same. Had it been raised by the defendant, it would have been the duty of the court, if it found the plaintiffs were otherwise entitled to a renewal of such lease, to require the defendant to make the same to some member of the firm, or other person capable of taking title to real estate, in trust for the plaintiff firm.

6. Finally, the defendant insists that the plaintiffs' remedy at law was adequate, and that they are not entitled to any equitable relief. Whatever the rule may originally have been, it has become almost a matter of course to award specific performance of contracts concerning real estate. When such contract is valid, unobjectionable in its nature, and in the circumstances connected with it capable of being enforced, and it is just and proper that it be fulfilled it is as much a matter of course for a court of equity to decree a specific performance as for a court of law to give damages for the breach of it. *Morgan v. Hardy,* 16 Neb. 427. In this case the plaintiffs purchased a stock of goods and the good will of the business theretofore carried on upon the property rented by them, with the stipulation that the defendant should not engage in the same business while they continued to rent said property. They appear to have been still carrying on this business at the time of the commencement of this action, and to have desired to renew the lease for the purpose of its continuance. Under these circumstances, an action at law would not have been an adequate remedy, and the right of the plaintiffs to equitable relief is clear and unmistakable.

We therefore recommend that the judgment of the district court be affirmed.

DUFFIE, EPPERSON and GOOD, CC., concur.

By the Court: For the reasons stated in the foregoing opinion, the judgment of the district court is

AFFIRMED.