## GAMBLE v. LOFFLER.

Persons contracting for the purchase of real estate, each to acquire a specified interest therein and each to pay a proportionate part of the price, are not partners; but the transaction creates a joint adventure.

Persons who are joint adventurers in a transaction are each under the obligations of fidelity and fair dealing in matters looking to the creation of the joint adventure as well as in all their dealings after the formation of the relation.

A party to a joint adventure may recover from a coadventurer for any secret advantage taken by the latter, but the recovery, where a rescission of the contract of joint adventure is not sought, is based

on the amount of the secret benefit obtained, unaffected by the value of the contract to the party complaining.

Where a party to a joint adventure sues for a rescission of the contract of joint adventure and for damages because of fraud of a coadventurer in obtaining a secret advantage, the recovery is limited to the amount the complaining party has paid the joint adventurer, unaffected by the value of the secret advantage wrongfully taken.

A complaint which shows a joint adventure in the purchase of real estate, that plaintiff, a party thereto, relied on the false state-ments of defendant, a coadventurer, and paid money to defendant, and which demands judgment for the sums paid accruing to defend-ant as a secret benefit, shows a suit to recover a share in secret profits obtained by defendant, and the amount of the recovery can only be based on the amount of the secret benefits.

Where a party to a joint adventure sues a coadventurer for secret advantages gained, the only issue is whether the defendant has gained a secret advantage in fraud of the complaining party, and evidence of defendant's good faith at the time of entering into the contract of joint adventure is immaterial, but defendant may ex-plain how the alleged benefits were received to rebut fraud.

(Opinion filed, November 14, 1911.)

Appeal from Circuit Court, Yankton County.   Hon. FRANK B. SMITH, Judge.

Action by Robert J. Gamble against Gilbert D. Loffler.   From a judgment for plaintiff, defendant appeals.   Affirmed in part, and reversed and new trial granted in part.

*Charles P. Bates,* for appellant.

Representations by the vendor as to the price paid for property do not constitute actionable deceit, in the absence of fiduciary relations between the parties, or other facts or circumstances showing an agreement that the price paid should determine the price in the contract.   Beare v. Wright, 103 N. W. 632; Holbrook v. Connor, 11 Am. Rep. 212; Hemmer v. Cooper, 8 Allen, 334; Cooper v. Lovering, 106 Mass. 77; Hauk v. Brownell, 11 N. E. 416.

*French & Orvis,* for respondent.

WHITING, J.   The complaint herein unites three causes of action not separately stated; two of said causes being to recover damages claimed to have been suffered through the fraud and deceit of defendant while defendant was occupying a fiduciary

relation toward plaintiff in two certain joint adventures in the purchase of real estate.

The complaint sets forth in brief as follows: (1) That on several occasions in the fore part of July, 1907, defendant represented to plaintiff that he, said defendant, together with one Taylor, had an opportunity to purchase what was known as the "Jay Ranch." That the lowest terms and price upon which it could be purchased were as hereinafter set forth. That defendant asked him to join with defendant, Taylor, and some other party in purchasing such land. That defendant stated they would buy said land as partners, each contributing an equal part of the cost and each to share equally in the profits therefrom. That later in July, 1907, the defendant stated to plaintiff that he, Arthur A. Taylor, William S. Stockwell, and Willard C. Lusk had contracted with Jay to purchase from said Jay 5,600 acres of land in Pennington county, being the "Jay Ranch," for $60,600, of which $58,800 was to be paid to said Jay and $1,800 to Farrar and Jepson, real estate brokers. That the first payment to Jay was $4,800, and that each of the four purchasers had paid Jay $1,200 as his share of such payment. That defendant would sell plaintiff one-half interest in said contract and land for exactly what the same had cost him. That plaintiff believed and relied upon said statements and purchased one-half of defendant's interest in said contract and land, and paid defendant therefor $600 cash, and agreed to pay one-eighth of all deferred payments to be made under said contract. That the said statements of defendant were false, in that the amount of the first payment to Jay was $2,000, instead of $4,800. That no portion of first payment was made by defendant, and that defendant had never paid Jay any money whatever upon said contract.

(2) That in July, 1907, defendant stated and represented to plaintiff that he had secured a contract with one Albert Bates for the purchase of 1,600 acres of land in Pennington county known as the "Bates Ranch," at the price of $17,600, to be paid in installments, the first payment to be $3,200, and asked plaintiff to

join with him, Robert B. Tripp, and J. W. Ohlman in the purchase of said land, each to pay one-fourth of the purchase price, and afterward to sell the land and share the profits equally. That plaintiff believed said statements, and, relying upon the same, joined with the defendant, Taylor and Ohlman, in purchasing the Bates ranch, and paid $800 as his share of the first payment thereon. That the statements made to plaintiff by defendant were false, in that the purchase price of said land was $16,800, instead of $17,600, and that the first payment was $2,400, instead of $3,200.

(3) That the plaintiff paid defendant $166.66 as a commission for his time, services, and expenses in procuring the contract for the purchase of the Bates ranch, and that defendant agreed to refund said amount if title to said land should not be procured from said Bates. That the contract between said purchasers and Bates was afterward rescinded, and title to the land never procured.

(4) Plaintiff demanded judgment for $600 damages on the first cause pleaded, $200 on the second, and $166.66 on the third, together with interest on each.

Appellant raises no question and assigns no error as to the judgment so far as the recovery of the $166.66 and interest thereon is concerned, and therefore such part of the judgment is affirmed.

Defendant's answer contained a general denial, and, in addition thereto, the following, in substance:

(1) That in July, 1907, the Yankton Land & Investment Company had the exclusive sale of the land known as the Jay ranch, and that the officers of said Yankton Land & Investment Company informed defendant that Farrar & Jepson, real estate brokers of Rapid City, had a contract with Joseph Jay, the owner of said land, authorizing them to sell the same for $56,000 net to Jay. That Farrar & Jepson had placed said land in the hands of the Yankton Land & Investment Company for sale at the net price of $57,800. That said company had fixed its commission at 50 cents per acre, and would sell said land for $60,600 net, $4,800 of the purchase price to be paid in cash and the balance in certain

deferred payments. That shortly thereafter William S. Stockwell, Willard C. Lusk, Arthur A. Taylor, and the defendant entered into an agreement to purchase said land for the price and upon the terms offered by said Yankton Land & Investment Company. That said purchasers made the first payment of $4,800 on said land, of which $2,000 was paid to Jay and $2,800 to the Yankton Land & Investment Company for its commission. That thereupon the said Jay entered into a contract in writing with said Stockwell, Lusk, Taylor, and defendant for the sale of said land to them for $60,600, of which $4,800 was to be paid in cash and the balance in deferred payments. That about July 20, 1907, plaintiff purchased of defendant one-half of defendant's one-fourth interest in the Jay ranch and in the contract for the purchase thereof, and paid defendant therefor $600 cash, and agreed to pay one-eighth of all deferred payments.

(2) That in July, 1907, the Yankton Land & Investment Company had the exclusive sale of the land known as the Bates ranch, and the officers of said company informed the defendant that Farrar & Jepson had a contract from Albert Bates, the owner of said land, authorizing them to sell the same for $16,000 net to said Bates. That Farrar & Jepson had placed said land in the hands of the Yankton Land & Investment Company for sale at the net price of $16,800. That said company had fixed its commission at 50 cents per acre, and would sell said land for $17,600 net, $3,200 of the purchase price to be paid in cash, and the balance in certain deferred payments. That shortly thereafter the defendant stated to plaintiff the price and terms upon which the land could be purchased. That thereupon the plaintiff, defendant, Robert B. Tripp, and J. W. Ohlman entered into a written agreement to purchase said land for the price and upon the terms last aforesaid. That thereafter, and about July 20, 1907, the said purchasers made the first payment of $3,200 on said land, $1,600 of which was paid to said Albert Bates, $800 to Farrar & Jepson for their commission, and $800 to the Yankton Land & Investment Company for its commission. That after making said payment, and about July 30, 1907, the said Albert Bates entered into a

written contract with the plaintiff, defendant, Tripp, and Ohlman for the sale of said land to them for $17,600, of which $3,200 was to be paid in cash and the balance in deferred payments.

We think the evidence offered by the plaintiff fairly tends to sustain all of the allegations of the complaint. The contract for the purchase of the Bates land is fully set forth in the opinion in the case of Bates v. Loffler, 28 S. D. —, 133 N. W. 283, just decided by this court, and reference is made thereto for its contents. The contract with Jay was similar in regard to the division of the payments, and in neither contract was there anything to reveal the fact that any one other than the vendor was to receive any part of the purchase price. The parties to this suit entered into a written contract for the sale to plaintiff by defendant of a one-half of defendant's fourth interest under the Jay contract. The evidence received showed that while defendant drew his check for $1,200 in the "Jay" transaction and for $800 in the "Bates" transaction, and these checks were sent with those of his joint adventurers with the supposition upon the part of such joint adventurers that all the checks were to be applied upon the first payments under such contracts, as a matter of fact, defendant's checks were returned to him as well as $200 collected from his coadventurers' checks in the "Jay" transaction. Appellant contends that there was no evidence tending to show any fiduciary relation existing between himself and plaintiff in the Jay transaction, and, further, that there was no evidence tending to show that he agreed to sell the one-half of his interest in the Jay ranch and contract for one-half of what it had actually cost him. We think in this the appellant is mistaken.

[1, 2] While the relation existing between these parties under the contract for the purchase and sale of the interest in the Jay contract or the relation between these parties and their covendees under the Bates contract was not that of an ordinary partnership, it created them parties to joint adventures, and the obligations of fidelity, fair dealing, and truthfulness between them, both in matters looking to the entering into such relationship and in all their dealings after the relationship was entered into, are the same as in the case of a partnership proper. 23 Cyc. 453, 455.

[3] The fact that the contract may be of great value to the party defrauded in no manner affects his right to recover from his coadventurer for any secret advantage taken by him; the amount of the recovery, unless the injured party seeks to rescind the contract of joint adventure, depending in no manner whatsoever upon the amount the injured party has put into the adventure, but only upon the amount of secret benefit or advantage enjoyed by the wrongdoer.  As upholding the above propositions, see the following authorities: Jordan v. Markham, 130 Iowa, 546, 107 N. W. 614; King v. Wise, 43 Cal. 633; Densmore Oil Co. v. Densmore, 64 Pa. 43; Getty v. Delvin, 54 N. Y. 403; Iler v. Griswold, 83 Iowa, 442, 49 N. W. 1023; Shoufe v. Griffiths, 4 Wash. 161, 30 Pac. 93, 31 Am. St. Rep. 910; Dunlop v. Richards, 2 E. D. Smith (N. Y.) 183; Yale Gas Stove Co. v. Wilcox, 64 Conn. 101, 29 Atl. 303, 25 L. R. A. 90, 42 Am. St. Rep. 159; Paddock v. Bray, 40 Tex. Civ. App. 226, 88 S. W. 419.

[4] While it is thus clear that the amount to be recovered, in an action brought by one party to a joint adventure to recover of another party thereto a share of the secret advantage or benefit enjoyed by such other party, is based upon the amount of such secret advantage, if the wronged party, instead of bringing such an action, should bring one for damages basing his right to recovery upon a rescission of his contract with his joint adventurer, or bring one seeking a decree of rescission and damages, his recovery, if any, would be the amount he had paid his joint adventurer, and would not be based in any manner whatsoever upon the amount of any secret advantage or benefit that had been fraudulently enjoyed by his coadventurer.  Applying the above to the facts alleged and proven, so far as the "Jay" transaction is concerned, plaintiff, basing his right of action upon the fiduciary relation existing between himself and defendant, and seeking to recover his share of the secret benefit enjoyed by defendant, and at the same time retaining all his rights under his contract with defendant, is entitled to recover the difference between what he did pay and what he should have paid; in other words, the difference between one-eighth of $4,800, namely, $600, and one-

eighth of $2,000, namely, $250 or $350; while, in an action based upon a rescission or seeking a rescission he would have been entitled to recover the full $600 he paid. As was well said by the learned court in King v. Wise, supra:: "This rule, which requires a rescission of the contract upon the discovery of fraud, has no application in this case. The contest is not between a vendor who has made fraudulent misrepresentations in regard to the property sold, and the vendee, who has been misled and injured by the fraud. The plaintiffs may have been willing to purchase the land at the price they paid, or even a larger price, and may not wish to rescind the sale; but they are none the less entitled to hold the defendant to a strict observance of the trust confided to him, and to enjoy their proportionate benefit of any bargain he may have made. They do not complain that they were induced to pay more than the land was worth, but that they would have paid less if the defendant had been faithful to his trust. By their affirmance of the contract, after knowledge of the fraud, they lost any right they may have had to rescind the sale and recover back the purchase money; but it was not a release of their right of action against the defendant for damages resulting from his fraudulent acts."

[5] A reading of the complaint as regards both the "Jay" and "Bates" transactions shows that it was one to recover a share in the secret commission received by his coadventurer, and in no manner one for rescission, or based upon any rescission of any contract.

[6] With the above understanding of the nature of the action and what must be the limit of plaintiffs' recovery, if he is entitled to recover anything, we will consider the alleged errors complained of by defendant. The defendant when called as a witness was asked numerous questions from the nature of which it is apparent that defendant hoped to be able to satisfy the jury, first that the only price and the only terms upon which he was ever authorized to acquire either the Jay or Bates ranch were the terms placed in the contract of purchase in each case; second, that, although he received back his check advanced on each purchase,

and, in addition, in the Jay Case, received an apparent commission of $200, the return of such checks and the payment of said $200 was upon a consideration entirely outside of and in no way connected with the said "Jay" and "Bates" deals. These questions were all objected to, and the objections sustained. Did the court err in excluding this evidence? If this were an action seeking rescission or based upon a claimed rescission, then plaintiff's recovery would rest upon the fraud accompanying the entering into of the two contracts, and he could not recover if there were no fraud upon the part of the defendant at the time such contracts were entered into, though defendant might afterwards have, in fraud of his coadventurer or coadventurers, received a secret rebate or commission. To illustrate, if defendant honestly and in the best of good faith entered into all of these contracts, and, after the same had been fully entered into, he, without any previous agreement that he should receive the same, should have had his checks returned a benefit not common to his coadventurers, no action whatever might lie for rescission or based upon an attempted rescission, but an action would lie to recover a share of the secret benefit. This not being an action for rescission, it became immaterial whether there was an understanding or agreement antedating the contracts of coadventure, the only material question being, Was there ever a secret advantage gained by defendant in fraud of his coadventurer or coadventurers? It therefore follows that the court's rulings excluding evidence that might tend to show good faith on the part of the defendant at time of entering into the contracts were correct. Upon the other hand, no matter how fraudulent the conduct of defendant may have been, no matter how many grounds for rescission of contracts he may have given plaintiff, yet plaintiff cannot hold his rights under the contracts, keeping the benefits thereof, and at the same time recover any damages from defendant basing his claim for damages upon any secret advantage, commission, or rebate received by defendant, if, as a matter of fact, the defendant never gained any such advantage or received any such rebate or commission. It follows, therefore, that, no matter how strong a case plaintiff had made out and how improbable it might appear that the defendant

could ever convince the jury that, in fact, he received no commission or rebate—and we must confess that it seems to us almost inconceivable that defendant could ever overcome the case made by the plaintiff—yet it is the right of this defendant the same as of any litigant to make black look white to the jury and court, and the defendant herein should have been allowed to explain to the court and jury how he came to receive the $200 cash upon the "Jay" deal and also receive back his two checks issued in these deals, and to show that the same were not received as a commission or rebate in such deals. The court clearly erred in excluding the answers to the second line of questions asked.

The learned trial court instructed the jury that, in case plaintiff was entitled to recover upon the "Jay" transaction, the amount of his recovery would be $600 and interest. In view of the fact that this cause of action as well as the one to recover for secret commission in "Bates" deal must be retried, we would call attention of the trial court that the recovery, if any, in the "Jay" transaction could not in any case under the facts pleaded exceed $350 and interest. A considerable part of the court's instructions were excepted to. It is unnecessary for us to review same at length, as any errors in same can readily be discovered by the trial court in the light of our views expressed herein.

The judgment of the trial court is affirmed to the extent of the sum of $166.66 and interest at 7 per cent. per annum from July 20, 1907, being the amount plaintiff was entitled to recover upon his third cause of action, and such judgment is reversed and a new trial granted upon the other two causes of action. Neither party shall recover costs in this court.

SMITH, J., took no part in this decision.