CAROLINE GEHLHAR, Appellant, v. HERMAN KONOSKE, John Konoske, Elsie Konoske, W. B. S. Trimble Company, a Corporation, Herman Rode, Rosena Knoepke, John A. Konoske, Mary Konoske, Arthur Konoske, and All Persons Unknown Claiming any Estate or Interest in the Property Described in the Complaint, Respondents.

(195 N. W. 558.)

**Joint adventures — agreement between two brothers and sister to mutually pay for land held joint adventure; substitution of party to joint adventure held to continue and consummate it; sister held entitled to enforce rights in land under joint adventure against substituted brother.**

Where two brothers and a sister entered into a joint enterprise whereby they agreed to mutually contribute their efforts in the payment of the purchase price under a contract for a deed to a section of land taken in the names of the two brothers, and to give to the sister in recognition of her services as housekeeper, an equal one-third interest in their rights acquired or to be acquired, and where, soon after such engagement, one of the brothers was killed and, pursuant to arrangements made with the surviving brother, another brother was substituted in place of the deceased brother, and thereafter, for many years, the sister contributed her services as housekeeper pursuant to the original arrangement until completion, to the satisfaction of the surviving brothers, but without knowledge of the original arrangement, so claimed, by the substituted brother, it is held, for reasons stated in the opinion:—

(a) That a joint adventure was created between the original brothers and the sister, the plaintiff.

(b) That, pursuant to the arrangements made for the substituted brother, his acts and conduct, and the reception and acceptance of the sister's services, such joint adventure was continued and consummated.

(c) That, under the facts and circumstances, the sister, as a joint adventurer, is entitled to assert and enforce her rights in the section of land against the substituted brother.

Opinion filed October 13, 1923. Rehearing denied October 27, 1923.

Frauds, Statute of, 27 C. J. § 427 p. 343 n. 96, 99. Joint Adventures, 33 C. J. §§ 2 p. 842 n. 6; 16 p. 845 n. 67; 57 p. 859 n. 98; 64 p. 860 n. 36; 71 p. 862 n. 66; 96 p. 871 n. 21. Partnership, 30 Cyc. p. 424 n. 6.

In District Court, Stutsman County, *Jansonius*, J.

Action in equity to quiet title in a section of land.

Plaintiff has appealed from a judgment of dismissal and demands a trial de novo.

Reversed.

*John A. Jorgenson,* for appellant.

"Where one person acquires property which legally or equitably belongs to another, the latter may maintain a suit to have a resulting trust in such property established in his favor." 39 Cyc. 524, note 39.

"Thus, as a general rule, where land is paid for with the funds of one person and title thereto is taken in the name of another; a resulting trust in such property may be established, or if established, enforced by the person whose money is thus applied." 39 Cyc. 525, note 41. See also R. C. L. subject, "Trusts," subd. IV. §§ 57 to 77; Lynch v. Herrig, 32 Mont. 267, 80 Pac. 240; Moore v. Moore (Miss.) 19 So. 953.

"To constitute a waiver within the definitions already given, it is essential that there be an existing right, benefit, or advantage; a knowledge, actual or constructive, of its existence, and intention to relinquish it." 27 R. C. L. § 5, p. 908.

Acquiescence is based and is founded on knowledge and assent. Tennent v. Union Central, 133 Mo. App. 345, 112 S. W. 754; Badd v. Sullivan, 43 S. C. 436, 21 S. E. 277.

Acquiescence is an intentional failure to resist the assertion of an adverse right. Badd v. Sullivan, supra.

The rule of estoppel is inoperative unless it appears that the party

against whom it is invoked was fully aware of his right.   Tennent v. Union Central, supra; Cooke v. DeGraw, 23 Jones & S. 548, 14 N. Y. S. R. 727.

No estoppel arises where the acquiescence by all concerned is due to a common mistake.   Leslie v. Harrison, 97 Kan. 22, 154 Pac. 209; Green v. Yarnall, 6 Mo. 326; Pegues v. Haden, 76 Tex. 94, 13 S. W. 171.

No estoppel arises where the facts fail to show acquiescence clearly and unambiguously.   Ocmulgee River Lumber Co. v. Ocmulgee Valley R. Co. 251 Fed. 161, 163; The Isaac Newton, Fed. Cas. No. 7,089; Rosenfield v. Fortier, 94 Mich. 28, 34, 53 N. W. 930; Terhunde v. Matawan, 87 N. J. Eq. 195, 100 Atl. 342; Martin v. Angel, 7 Barb. 407.

"The party relying on estoppel must not have had the means of knowing the true state of facts."

"Certain kinds of services of a very personal nature have been recognized by a clear majority of American cases as a sufficient act or part performance unaided by possession or other act on plaintiff's part. Where the services rendered are of such a peculiar character that it is impossible to measure their value by a pecuniary standard, and where it is evident that the parties did not intend to measure them by any such standard, it is impossible adequately to compensate the party performing the services except by a decree for specific performance."   36 Cyc. 673, note 39 and cases cited.

"When it was verbally agreed that one should live with the owners of land and conform to their strict ideas as to her social conduct till she was married, and that on their death she should have the land, and she fully performed her part thereof, and there can be no recovery at law because of the bar of limitations, for her labor, sacrifices, and deprivations during the 10 years she so lived with them, worth as much as the land was worth then, specific performance will be granted." Gladville v. McDole, 247 Ill. 34, 93 N. E. 86.

C. S. Buck and Carr & Rittgers, for respondents.

The evidence to establish an implied trust must be clear and convincing.   16 Cyc. 154.

Oxborough v. Cary, 21 A.L.R. 350, 187 N. W. 707.

It is a settled rule of law, that means of knowledge is the equivalent of knowledge. 16 Cyc. 164.

## Statement.

BRONSON, Ch. J. This is an action in the nature of an action to quiet title. The subject-matter involves a controversy between a sister, as plaintiff, and a brother as defendant, affecting a section of land in Stutsman county, North Dakota. In general, the complaint alleges a partnership arrangement made in 1908 between two of plaintiff's brothers whereby they agreed to purchase and farm this section of land. Also an agreement to use the services of plaintiff as housekeeper and to give to her therefor an undivided one-third interest in the land; that in the spring of 1909 one of these brothers died and her other brother, the defendant Herman, was substituted for him in the arrangement made; that, pursuant to such arrangement, she worked for some seven seasons performing domestic duties for her brothers and during such time the land was broken, farmed and buildings erected thereon; that, in November or December, 1915, plaintiff discontinued her services and at that time the equity in the land was $12,500 and the value of her services thus rendered, $4,200; that in January, 1916, defendant Herman married and his wife took up the household duties formerly performed by plaintiff; that in July, 1916, her other brother, John, disappeared and his whereabouts have since been unknown. Plaintiff requests a decree for an undivided one-third interest in the section and, also, judgment for the value of the use of such land from 1916 until 1922. The defendant Herman Konoske and his wife interposed an answer to the effect that in 1909, after the death of his brother, he was substituted as partner in the undertaking concerning the section; that in July, 1916, the other brother, John, disappeared; that he, the defendant, was appointed receiver of this brother's interest, and pursuant thereto he has exercised control over the interest of such brother who disappeared; that in April, 1917, the company from whom the land was purchased deeded the same to the brother who disappeared and himself and he, as receiver and for himself, executed a mortgage to such company for $12,560; that the plaintiff has had full knowledge of all proceedings taken in connection with the partnership between his

brother John and himself and in connection with the receivership proceedings and has not at any time before or after the disappearance of his brother John asserted any claim in the premises and that by reason of her failure so to do she is estopped from claiming or asserting any right therein; that there is no written evidence of any kind setting forth the interest of plaintiff in the land. The mortgage company interposed an answer asserting its mortgage as a first lien upon the land superior to any claims of the plaintiff or the other defendants. The priority of its lien is not disputed in the record.

The facts are: On June 22nd, 1908, the defendant Trimble Company made a contract for a deed with Arthur and John Konoske, plaintiff's brothers, to sell this section of land to them for a consideration of $13,000. This contract recited the payment of a consideration of $200, a note for $1,000, due November 15th, 1908, and another note for $11,800 due on or before October 15th, 1916, which was payable, starting in 1909, by crop payments of one half of the grain raised from year to year. At this time plaintiff was aged seventeen years; Arthur, twenty-three years; John, twenty years; and defendant Herman, nineteen years. Then, they were living with their father and mother on the father's farm some nine miles distant from this section in controversy. From the record it appears that on June 22d, 1908, $200 was paid on this contract and on October 5th, 1908, $1,000. Subsequent payments were made as follows: In December, 1909, $1,550; in November, 1910, $460; in December, 1911, $1,200; in November, 1912, $1,456; in October, 1913, $1,500. Pursuant to the testimony of the plaintiff, during the winter of 1908–1909 she made an agreement with her brothers Arthur and John to keep house for them. Then they had purchased this section. They were contemplating purchasing another section. They agreed with her that if she would stay with them they would give to her a one-third interest in this section. She was to contribute her work as a share of the payment; they were to contribute the money as their shares of the payment and each was to share alike in the value of the land. She agreed to stay with them until they were upon their feet. At this time this section was unbroken and had no buildings thereupon. She entered upon her duties at once. In March, 1909, plaintiff's brother Arthur was killed in an accident. Pursuant to the testimony of the mother, the brother John offered his

brother, the defendant Herman, the same rights under the contract for this section involved as the deceased Arthur had, and the arrangement with the plaintiff, the daughter, continued the same as between her and Arthur and John. She further testified that she had a talk with John and inquired from him if he and Herman had the same arrangement with the daughter as John and Arthur had; he advised his mother that the same arrangement held good. Pursuant to the testimony of the defendant Herman, he made an arrangement with his brother John about the first of April, 1909, after his brother's death. There was no written agreement. He testified "My brother Arthur died and it was quite an undertaking for one so I just stepped in his shoes." During the first year, 1909, she remained at the home place. Her brothers were farming this home place. During that year they broke up and put into flax this section. Her mother went over and kept house for them while they put in the crop. Afterwards they moved back to the home place. When the flax crop was harvested she went out and kept house for the boys in a cook car. Afterwards they moved back and lived at the home place during the winter. The same performance was repeated in 1910. The home place was put in and then they moved out and put in this section. Buildings were erected in 1910; a barn and a granary. They lived in the cook car and the granary. During the summer a well was drilled and a house built and they moved into the house in 1910. From that time on continuously until she left in November, 1915, she lived there on this section with the exception of five weeks when she was on a vacation. During this time she did all the household work, such as cooking, washing, cleaning, etc., without any help excepting a Russian girl that she had in 1911 during the summer when she was not well. For instance, during the summer of 1910, she mentions about doing housework and cooking for twelve men. In a busy season they never had less than seven men and sometimes up to fourteen for which she was required to cook. For this work she never received any wages excepting board and clothes. Some of her clothes she got from her sister. Gradually this land was broken up and placed under cultivation. The boys operated under the name of "Konoske Brothers." When Arthur died there was no making over of any papers. John simply took Herman in as a partner without any change being made in any way. Plaintiff testified that after the death

of Arthur she had no talk with Herman about the arrangement she had made with John and Arthur. Her dealings were with John. She did not speak to Herman about it. After John disappeared she did not say anything to Herman about it until he published a notice of dissolving the partnership. Then she thought if it was to be dissolved, she was a partner. She wrote to him to come to the house and advised him that she wanted a settlement of her share. This was in March, 1922. Defendant Herman testifies that after he made this arrangement with his brother John, his sister did not say anything to him concerning any claims she had or interest in this section until she first notified him on March 21st, 1922; that his brother John never at any time before his disappearance said anything about any interest his sister had in the property. Otherwise, he testified that while his sister was there at work, the subject of the property and the debts and the income was a matter of general conversation so that in a general way she had general knowledge of conditions but she never made any claims asserting her interests. Concerning her work Herman admits that she did this work during those years. Concerning the arrangements made with John, he simply states that there wasn't anything said excepting that he, was to take Arthur's place. He knew that his sister was not getting any wages. He never offered to pay her any and she never asked for any. Concerning whether his sister was working there for nothing, he states that he never gave the matter any thought; he expected her services were valuable; nothing was ever said about it; he wanted her services and accepted her services. But, there was no agreement ever made about wages. Anyway, he stated that she got about as much as he did, the chance of staying there; that was about all. In November, 1915, plaintiff ceased this relation with her brothers. Pursuant to her testimony then she had lived up to her contract and stayed with them until they had got upon their feet. Later, she married her present husband with whom she had been going for several years. Then Herman got married and his wife went to live upon this section and kept house for her husband Herman and John, the brother, still single. In July, 1916, the brother John disappeared under peculiar circumstances. He left home with a Ford car, apparently for the purpose of going to a dance. His car was found later in a garage at Jamestown but he has never been seen since. His disappearance and

the cause thereof is still unknown. Otherwise, it appears that after the disappearance of John, receivership proceedings were instituted by Herman and he was appointed receiver for his brother's interests. Plaintiff was not a party thereto. Then arrangements were made with the owner of this section, the defendant Trimble Company, by which a deed was issued, dated January 10th, 1917, from this company to defendant Herman and his brother John. To secure the balance unpaid on the purchase price, a mortgage was executed for $12,560 signed by Herman, personally and as receiver. Otherwise, Herman stated that at the time his sister left in 1915 he and his brother owed, in addition to this amount owing on the purchase price on the land, something like $10,000 or $11,000. The cattle, horses, and machinery on the place were worth about $4,000 or $5,000. The wife of defendant Herman testified that some time in the fall of 1916 she talked with plaintiff concerning this property. She was sick in bed. She told plaintiff she had heard that she was a part owner in the property; that plaintiff replied that she had no interest; that she only stayed there and worked for the boys. She also testified that she talked with plaintiff at different times about it and she always said the same thing. Upon cross-examination she said this conversation came up because she had told the plaintiff what other people had told her before she was married to Herman; that other people had told her that plaintiff was supposed to be a part owner in this land and that that was the reason she continued there so long. Plaintiff explains these conversations with the wife of Herman by stating that the first time the question was asked Herman's wife was in bed and she simply told her, "Don't let that worry you. You are not working for me. You are working for yourself." In another respect plaintiff explains her delay in asserting her claim through being advised by Herman that nothing could be done until some seven years had elapsed after John's disappearance and that she relied upon such advice so given. Herman, in reply, explains that the seven year statement was made concerning an insurance policy. From the evidence it otherwise appears that good substantial buildings have been placed on this section. For instance: the house, a two story building with six rooms and full basement; a barn 24 x 60 which has two 60 foot leans on each side, 16 or 18 feet wide. There is also a blacksmith shop, a pumphouse, an icehouse, a chicken house and a granary. Trees

have been set out and some 70 acres fenced. There is some testimony in the record that the reasonable rental value during these years was $250 per year. In 1915 this section was worth $40 per acre. Some land across the road without buildings on it sold in 1917 for $35 per acre. Otherwise, it appears in the record that the father and mother gave to Herman Konoske a quitclaim deed of the section of land so as to carry the interest and title of Arthur to Herman.

The trial court found that the plaintiff did make an agreement in 1908 or 1909 after the execution of a contract, with her brothers Arthur and John whereby she agreed to keep house for them and they agreed to convey to her an interest in the premises; that after the death of Arthur in 1909 Herman made an oral contract with John whereby he was substituted in the purchase arrangement for Arthur; that Herman never had any knowledge at the time of his entering into the agreement with reference to purchasing the land with his brother John in 1909 of any claim or interest of plaintiff, and had no knowledge of any such claim until March, 1922; that since the disappearance of John on July 5th, 1916, Herman has occupied the premises and made improvements thereon and has invested thereon, in addition to proceeds received from the farm, the sum of approximately $8,000 received from the sale of another section. The court concludes that the oral contract made in 1908 or 1909 between the plaintiff Arthur, and John, was a contract of purchase and sale of an interest in land and that the partial performance thereof was insufficient to take it without the provision of the statute requiring contracts thereof to be in writing; that plaintiff furthermore by reason of her failure to assert her claim in the premises has waived her rights and is not entitled to any relief in a court of equity. Accordingly, judgment was entered dismissing her cause of action and adjudging plaintiff to have no interest in the land. Plaintiff has appealed from the judgment and demands in this court a trial de novo.

## Opinion.

It was requisite to state the facts somewhat fully. The subject-matter is a family affair. There is no doubt that the brothers, John and Arthur, with their sister, the plaintiff, engaged in a joint enterprise to

secure, through their co-operative efforts, this section of land and to secure to themselves the reward, that is, a constantly growing interest in the land through crop payments produced by their work. Otherwise, these two brothers were partners, or expected to be partners, in farming the home place, this section, and some additional school lands. There is no difficulty in finding that a joint adventure existed between these two brothers, John and Arthur, and the plaintiff concerning this section of land. The agreement, the purpose and the intent of these two brothers and the plaintiff is clear. They intended to become the owners of a section of land through their mutual efforts for their joint and mutual benefit. If this oral contract together with their acts did not create a technical partnership, it did create rights and obligations akin to those of a partnership, namely, a joint adventure. 15 R. C. L. 500; 23 Cyc. 453; Irvine v. Campbell, 121 Minn. 192, 141 N. W. 108, Ann. Cas. 1914C, 689; Gamble v. Loffler, 28 S. D. 239, 133 N. W. 288; note in Ann. Cas. 1916A, 1210. See Mullvain v. Hidden, 48 N. D. 580, 185 N. W. 1010. As joint adventurers, the relations between the parties was fiduciary in character and similar to those that exist between partners. Each owed to the other the utmost good faith and the most scrupulous honesty. The real estate involved, whether the title thereto was invested in one or more of the parties, was impressed with a trust for the benefit of the partnership in the joint adventure. See Irvine v. Campbell, 121 Minn. 192, 141 N. W. 108, Ann. Cas. 1914C, 689; Gamble v. Loffler, 28 S. D. 239, 133 N. W. 288; note in Ann. Cas. 1916A, 1210; 15 R. C. L. 501; 23 Cyc. 455. The rights of the parties are governed practically by the same rules that govern partnership. 15 R. C. L. 500; Goss v. Lanin, 170 Iowa, 57, 152 N. W. 45. Of course, the statute of frauds does not inhibit, under such circumstances, the proof and the enforcement of the oral contract. See note in 37 L.R.A.(N.S.) 889; Hardin v. Hardin, 26 S. D. 601, 129 N. W. 108. Such joint adventure so established continued until its purpose was accomplished. Note in Ann. Cas. 1916A, 1217; Goss v. Lanin, 170 Iowa, 57, 152 N. W. 45. If, later, a partner was brought into this joint adventure, he became entitled to the same rights as the original coadventurers. Fred Gorder & Son v. Pankonin, 83 Neb. 204, 131 Am. St. Rep. 629, 119 N. W. 449.

Accordingly, when the brother Arthur was accidentally killed, the

joint enterprise was then established and was then on its way. A section of land had been purchased and a contract for a deed issued to the brothers John and Arthur. Twelve hundred dollars had then been paid upon this contract.

The only difficult question in the instant case is whether the brother Herman, the defendant, became a partner in this joint enterprise after Arthur's death and whether such joint enterprise continued until and for the fulfillment of its original purpose.

To defeat this engagement and its continuance, Herman, the brother, asserts that he never knew anything about this arrangement until some six years after his sister had quit the service, and that his sister is estopped by reason of her silence and acquiescence from asserting, as against him, any such joint enterprise or contract. To aid a court of equity in fixing the status of property in a partnership or joint enterprise, the acts and conducts of the parties may furnish as convincing proof as oral words or agreement. In fact, the proof of an oral agreement may not be necessary where from all the acts and conducts of the parties a court of equity can be satisfied that it was the thought and intent of the parties to treat the property as firm property. See Johnson v. Hogan, 158 Mich. 635, 37 L.R.A.(N.S.) 889, 123 N. W. 891; note in 37 L.R.A.(N.S.) 889; Ames v. Ames (C. C.) 37 Fed. 30.

In the case at bar the brother Herman recites no specific agreement made with his brother John. He simply asserts that the arrangement was made that he should step into the shoes of his dead brother Arthur. It must be noted that the entire family were living together with their father and mother. At this time, in 1909, plaintiff was aged about eighteen years; John, twenty-one years; and Herman, the defendant, twenty years. Between themselves the brothers, John and Herman, continued as formerly the brothers, John and Arthur, did. They worked the home place for a time; they started to break, farm and improve this section involved, and purchased and worked another half section of school land. The plaintiff continued her engagement the same as before. For seven seasons she worked hard and faithfully, pursuant to this original joint engagement, in assisting her brothers in the whole enterprise. The fact that the brothers otherwise were partners does not serve to deny this particular joint adventure. In December, 1909, $1,550 was paid upon this contract for this section of land;

in November, 1910, $460; in December, 1911, $1,200; in November, 1912, $1,456; in October, 1913, $1,500. During these years of work she received no wages. Pursuant to Herman's testimony she had access to a checkbook and could issue checks but from the record she withdrew money neither for clothes nor for wages except such as was requisite for actual necessities. For several years her present husband was a suitor for her hand but she did not marry until her engagement was fulfilled. She continued work until, pursuant to the original engagement, her brothers were on their feet and were willing that she might leave. They agreed that they were upon their feet and that she might go. Then she married. During all of this time the explanation of the brother Herman is that he knew nothing about this arrangement. He denies neither the work nor the services performed. He acknowledged the receipt of such service and his acceptance thereof without question. His explanation is that she got as much out of it as he did, namely, a place to stay. Although he asserts in his testimony, that he knew nothing about this arrangement of his brother John with his sister until March 1922, it is to be noted that his wife appears to have known all about it, and to have been very solicitous to inquire from plaintiff at different times about this engagement. She offered proof through her testimony that plaintiff denied any interest after making inquiries concerning the same from her. The plaintiff sufficiently explains this denial. The mother, in her testimony, recites a conversation with the brother John wherein he told the mother that the same arrangement held good with the sister such as was had with him and Arthur. The mother recites further conversations with her son Herman wherein he always spoke in highest praise of his sister's work for him and John on the ranch.

After the services of the plaintiff ceased in November, 1915, the brother John disappeared under peculiar circumstances in July, 1916, following. His whereabouts have since been unknown. Under the peculiar circumstances the conduct of the plaintiff, in not asserting actively her claims in the section, is not inconsistent with her alleged rights. She had considered her brother the soul of honor. With him all of her business relations had been conducted. She had not theretofore at all discussed with Herman these business arrangements. It is wholly fair to assume that under such circumstances family pride and

the preservation of things as they were for her disappeared brother might cause her to remain silent and to let Herman continue the status quo until John might be found. Furthermore, there is evidence to show that the plaintiff was led to believe that nothing could be done until seven years had expired after John's disappearance. Under the circumstances of this record we are of the opinion that plaintiff's acquiescence and silence is fully explained. The brother Herman instituted receivership proceedings. He was appointed a receiver over and concerning his brother John's interests. He procured from the owner of the land a deed, in 1917, to himself and his brother John. He gave back a mortgage signed by himself, as receiver, and personally, for $12,560, almost the original purchase price for this land. Plaintiff was not a party to these proceedings.

We are of the opinion that upon this record a joint adventure was created between the brothers, John and Arthur, and their sister the plaintiff; that after the death of Arthur, Herman was substituted in the shoes of his deceased brother and this joint adventure continued, pursuant to its original purpose; that it was accomplished pursuant to its original purpose at the time when the completion of plaintiff's services were accepted and she ceased then the rendition thereof; that, at that time she was possessed of and entitled to an undivided one-third interest in this land to the extent of the right, interest and equity of this joint adventure so earned at that time. See Irvine v. Campbell, 121 Minn. 192, 197, 141 N. W. 108, Ann. Cas. 1914C, 689; note in Ann. Cas. 1916A, 1216; 23 Cyc. 462; 15 R. C. L. 507. The trial court erred in its conclusion that the statute of frauds applied and that the plaintiff was estopped by reason of Herman's lack of knowledge. We are clearly of the opinion that Herman under the facts and circumstances, cannot be heard to say that he did not know about this arrangement when he accepted a substitution of himself in place of his deceased brother and continued this joint adventure without question and without in any manner negativing his sister's rights which existed at the time he became a partner in this joint adventure. The judgment of the trial court, accordingly, is reversed and the cause remanded for further proceedings consonant with this opinion.

JOHNSON, NUESSLE, and CHRISTIANSON, JJ., concur.

BIRDZELL, J., dissents.

## On petition for rehearing.

Bronson, Ch. J. Respondent, in his petition, admits that the agreement involved might be termed a joint venture, if it had been made before the land was purchased; but, contends that, since the land was purchased before the agreement was made, the statute of frauds applied and no joint venture could be created. Since joint ventures are created upon principles of law analogous in the creation of partnerships this contention is without merit. It matters not whether the land involved was individually owned before, or was afterwards acquired, so long as it was contributed and devoted, as property, to the uses and purposes of the joint venture. Note in Ann. Cas. 1916A, 1210; 20 R. C. L. pp. 852, 860, 862; 23 Cyc. 455; 30 Cyc. 424; 15 R. C. L. p. 504. Brown, Stat. Fr. 5th ed. § 261a. It is urged that the deposition of one of the parties was improperly taken and admitted in evidence. This contention is without merit. It is finally urged that, in any event, this court should point out specifically the nature of plaintiff's interest in the joint venture. As pointed out in the opinion, plaintiff, at the time when the joint adventure was accomplished, so far as her active relations therewith were concerned, and when the completion of her services was accepted and her active relations ceased, then was entitled to an undivided one-third interest in this land to the extent of the right, interest and equity of this joint adventure so earned at that time. That is, if the land then, for purposes of liquidating the joint adventure and paying each of the joint adventurers, had been sold and the cash therefor, less the liens, brought into court for an accounting, it would have been a simple matter to have divided the cash among the parties. But, the land has not been sold; it has remained in specie; subsequent liens have attached; taxes and interest subsequent have accrued; use and occupation of the land has been had. An accounting in equity now must be had for the purposes of this joint adventure. In order to have such accounting now, the net value of the joint adventure concerned must be considered as if the property which constitutes the assets of the joint adventure was in court now and was liquidated in cash less the liens that existed thereupon at the time when plaintiff's active relations ceased and the joint adventure was accomplished. The net assets of such joint adventure then remaining must necessarily be

balanced by deducting or adding thereto as equity may determine in considering all the circumstances, the use and occupation of the land subsequent, less or plus the interest on the liens existing at the time when plaintiff's active relations ceased and the taxes and assessments. In other words, equity must ascertain the value of this joint adventure, as it existed when it was accomplished and when plaintiff's active relations ceased, upon the basis of the present value of the land. The petition for rehearing is denied.

CHRISTIANSON, JOHNSON, and NUESSLE, JJ., concur.