Jeffrey A. VOLTZ, Plaintiff
and Appellee,

v.

James DUDGEON, Defendant
and Appellant.

Civ. No. 10317.

Supreme Court of North Dakota.

May 26, 1983.

Submitted by Dan Plambeck, Fargo, of Stefanson, Landberg & Alm, Moorhead, Minn., for defendant and appellant.

Scott A. Griffeth (argued), of Fay & Griffeth, West Fargo, for plaintiff and appellee.

PAULSON, Justice.

James Dudgeon [Dudgeon] appeals from a judgment of the District Court of Cass County entered on June 2, 1982, awarding Jeffrey A. Voltz [Voltz] the sum of $1,333.29. We affirm.

In early 1978, Voltz, who was primarily engaged in the business of farming, purchased a 1969 Mack truck for the purpose of hauling grain under the name of Voltz Trucking. Voltz subsequently hired Dudgeon in July of 1978 to transport grain shipments. It was mutually agreed that Dudgeon be compensated at the rate of $80 for each load of grain that he hauled.

Shortly thereafter, Voltz and Dudgeon determined that there was a greater opportunity to make money if two trucks were operated, so a used Kenworth truck was purchased. Although the truck was purchased in the name of Voltz Trucking, both Voltz and Dudgeon signed the purchase agreement. Dudgeon's brother was hired as an additional driver.

During the period of time in which the Kenworth truck was operated by the parties, the business records pertaining to the Kenworth truck were maintained by Dudgeon's wife and kept at the Dudgeon home. The business was not operated out of any fixed location and the trucks were parked where the drivers lived. Dudgeon was responsible for overseeing the operation of the Kenworth truck, including payment of all bills incurred in its maintenance. Dudgeon was authorized to write checks on the Voltz Trucking checking account without having to seek prior approval from Voltz. According to Dudgeon, he did seek Voltz's approval when funds were low in the checking account. The evidence also reveals that Dudgeon withdrew his own compensation from the account from time to time, if there were sufficient funds in the account.

Following the purchase of the Kenworth truck, the Mack truck was involved in a collision and Voltz discontinued its operation, thus leaving the Kenworth truck as the only operative vehicle under the name of Voltz Trucking. It was subsequently discovered that there was a discrepancy in serial numbers pertaining to the Kenworth truck and that it was not the vehicle identified in the retail installment contract. As a result, the Kenworth truck was returned to the seller. This left Voltz Trucking with no trucks to operate.

In a complaint dated March 11, 1981, Voltz brought suit against Dudgeon, alleging that a partnership existed between the parties and that Dudgeon was responsible for one-half of the expenses incurred during the course of the business. Voltz further alleged that Dudgeon made an unauthorized loan from the Voltz Trucking account to a third person and that he was responsible to repay the loan. Voltz also alleged that Dudgeon received funds over and above his compensation for wages. Voltz's prayer for relief requested actual damages of $2,839.43, as well as costs, disbursements, and attorney fees.

The district court concluded that a joint venture existed between the parties.[1] The court determined that Dudgeon used $455 of Voltz Trucking funds, over and above his compensation, for his personal rent, and that $255 of that sum was never reimbursed to the account. The court also determined that fender attachments were purchased for the Kenworth truck from Voltz Trucking funds, which were removed and retained by Dudgeon, and which Dudgeon claimed were subsequently stolen. The account was never reimbursed and the trial court found Dudgeon to be one-half responsible for their cost of $93.58. The court further determined that Dudgeon was responsible for one-half of the attorney fees and costs incurred in rectifying the contract

1. The district court initially determined that a partnership existed between the parties. Dudgeon then moved the court for an order amending its findings of fact pursuant to Rule 52(b), N.D.R.Civ.P. On May 10, 1982, a hearing on the motion was held and although the court agreed with Dudgeon that no partnership existed, it concluded that a joint venture existed and the court ordered that the findings, conclusions, and judgment be amended accordingly

problems regarding the Kenworth truck. Dudgeon was also determined to be liable for one-half of $385 in maintenance expenses for the Kenworth truck. The court also ordered that Dudgeon reimburse Voltz for the $500 loan Dudgeon made to a third person. Costs of $25 were also awarded to Voltz.

Judgment for Voltz in the amount of $1,333.29 was entered on June 2, 1982. Dudgeon appeals from this judgment.

Dudgeon raises three issues in his appeal: (1) whether or not the court erred in determining that a joint venture existed between the parties; (2) whether or not the court erred in determining that Dudgeon is liable to Voltz for the loan advanced to a third person from the Voltz Trucking account; and (3) whether or not the court erred in determining that Dudgeon received funds over and above the compensation due him.

I

Although North Dakota has long recognized the joint venture relationship, see *Dimond v. Kling*, 221 N.W.2d 86 (N.D.1974); *Kelly v. Lang*, 62 N.W.2d 770 (N.D.1954); *Brudvik v. Frosaker Blaisdell Co.*, 56 N.D. 215, 216 N.W. 891 (1927); *Gehlhar v. Konoske*, 50 N.D. 256, 195 N.W. 558 (1923), our court has never specifically defined the elements necessary to establish its existence. It has been stated that no definite rule has been formulated for identifying the joint venture relationship in all cases. *See* 46 Am.Jur.2d *Joint Ventures* § 1 (1969); 48A C.J.S. *Joint Ventures* § 2 (1981); Crane and Bromberg, *Law of Partnership* § 35 (1968). Rather, each case depends on its own unique facts. However, in *Rehnberg v. Minnesota Homes*, 236 Minn. 230, 52 N.W.2d 454, 457 (1952), the Minnesota Supreme Court aptly summarized the generally accepted rule that, in addition to limitation as to scope and duration, an enterprise does not constitute a joint venture unless the following four elements are present:

"(a) *Contribution*—the parties must combine their money, property, time, or skill *in some common undertaking*, but the contribution of each need not be equal or of the same nature.

"(b) *Joint proprietorship and control* —there must be a proprietary interest and right of mutual control over the subject matter of the property engaged therein.

"(c) *Sharing of profits but not necessarily of losses*—there must be an express or implied agreement for the sharing of profits (*aside from profits received in payment of wages as an employe*) but not necessarily of the losses.

"(d) *Contract*—there must be a contract, whether express or implied, showing that a joint adventure was in fact entered into." [Emphasis in original.]

*See also Delgado v. Lohmar*, 289 N.W.2d 479, 482 n. 2 (Minn.1979); *Treichel v. Adams*, 280 Minn. 132, 158 N.W.2d 263, 266 (1968); 46 Am.Jur.2d *Joint Ventures* §§ 1, 13 (1969); 48A C.J.S. *Joint Ventures* §§ 10, 13 (1981).

We believe that the facts in the instant case adequately establish the existence of a joint venture relationship between Voltz and Dudgeon in the operation of the Kenworth truck.

The record reveals that both Voltz and Dudgeon contributed to the common undertaking. While Voltz contributed funds to the operation, Dudgeon contributed his time, skill, knowledge, and expertise in driving and repairing the Kenworth truck. Furthermore, Dudgeon assumed the responsibility for maintaining the business records and overseeing the general operation of the venture. Both parties had a proprietary interest in the Kenworth truck as evidenced by their signatures appearing on the retail installment contract. It further appears that Dudgeon had open access to the Voltz Trucking checking account. He routinely issued checks for various miscellaneous expenses as well as to himself for compensation. These facts are indicative of joint proprietorship and a joint right to control the operation.

The conduct of the parties also reveals that both Voltz and Dudgeon impliedly agreed to share the profits and losses asso-

ciated with the operation of the Kenworth truck. The testimony of both Dudgeon and his wife indicate that at the time the Kenworth was purchased, Dudgeon expected to gain equity in the truck as it was paid for, and subsequently to share in the profits of its operation. Dudgeon's testimony further reveals that he fully understood the significance of his responsibility as a cosigner of the retail installment contract. In regard to the responsibility to meet the monthly payments on the truck, Dudgeon testified that "If Jeff couldn't have made them, I would have had to". Dudgeon's implied agreement to share in the losses is also evidenced by his willingness to receive compensation only when sufficient funds were present in the Voltz Trucking checking account.

Dudgeon argues, however, that a contract showing that a joint venture was in fact entered into is lacking. He contends that there was no "meeting of the minds" between the parties with respect to all of the terms and conditions of the agreement and no intent to enter into the arrangement. In support of this contention, Dudgeon points to his testimony that the only reason he signed the retail installment contract was for establishing or improving his credit rating.

We have previously criticized the phrase "meeting of the minds" as being more misleading than helpful in deciding contract issues. *See North Central Jobbers v. Snortland,* 329 N.W.2d 614, 616–617 (N.D.1983); *Anderson v. Mooney,* 279 N.W.2d 423, 426 n. 1 (N.D.1979); *Amann v. Frederick,* 257 N.W.2d 436, 439 (N.D.1977). In *Gehlhar v. Konoske,* 50 N.D. 256, 195 N.W. 558, 561 (1923), our court concluded that while no written contract existed between persons intending to become joint owners in a section of land, the oral negotiations of the parties, together with their acts, were sufficient to establish a joint venture relationship. We are satisfied that the circumstances in the instant case indicate a sufficient objective manifestation of consent establishing that a contract was impliedly formed showing that a joint venture was entered into between Voltz and Dudgeon

regarding the operation of the Kenworth truck.

We accordingly conclude that the trial court did not err in determining that a joint venture relationship existed between Voltz and Dudgeon.

## II

■ Dudgeon next argues that the district court erred in determining that he is liable to Voltz for the amount of a loan advanced to a third person from the Voltz Trucking account. The trial court found that Dudgeon, without prior approval from Voltz, loaned Ed Peck $500 from joint venture funds which were not reimbursed to the joint venture and which were not the responsibility of the joint venture. It appears from the record that Ed Peck is a truck driver who was not associated in any way with the joint venture between the parties.

We believe that the evidence is sufficient to establish that the $500 loan was unauthorized and beyond the scope of the joint venture. As a result, the district court did not err in determining that Dudgeon was liable to Voltz for the amount of the loan. *See Kelly v. Lang,* 62 N.W.2d 770, 774 (N.D. 1954).

## III

■ Finally, Dudgeon asserts that the trial court's finding that he received $255 over and above the compensation which was due him is clearly erroneous because, Dudgeon contends, the evidence establishes that he was actually undercompensated in the amount of $395 rather than overcompensated. We note that the $255 at issue was used by Dudgeon for personal rent expenses.

We have reviewed the evidence and conclude that the trial court could properly find that Dudgeon was overcompensated in the amount of $255. We also believe that the trial court could properly have determined that such an expenditure was beyond the scope of the joint venture which existed between the parties. The trial court's find-

ing in this regard is not clearly erroneous. Rule 52(a) of the North Dakota Rules of Civil Procedure.

During oral argument before this court, Voltz requested costs and attorney fees because, he contends, this appeal has been dilatorily prosecuted. *See* Rule 38 of the North Dakota Rules of Appellate Procedure. Voltz has not adequately explained his basis for this contention and we therefore deny his request.

For the reasons stated in this opinion, the judgment of the district court is affirmed.

ERICKSTAD, C.J., and VANDE WALLE, SAND and PEDERSON, JJ., concur.